UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND et al., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:22cv1294 (PTG/WEF) |
| NEW YORK CHUTES, LLC, | ) ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

Plaintiffs filed this action pursuant to the Employee Retirement Income Security Act of 1974 and the Labor Management Relations Act of 1947, seeking to collect delinquent retirement and benefits contributions as well as accrued interest, liquidated damages, and attorney's fees and costs. This matter is presently before the Court on Plaintiffs' Motion for Default Judgment. (Dkt. 31).[1] For the reasons set forth below, the undersigned United States Magistrate Judge recommends that the Court deny Plaintiffs' Motion.

**I. PROCEDURAL HISTORY**

On November 15, 2022, Plaintiffs Board of Trustees for the Sheet Metal Workers' National Pension Fund, the International Training Institute for the Sheet Metal and Air Conditioning

---

[1] The relevant filings before the Court include Plaintiff's Amended Complaint ("Am. Compl.") (Dkt. 28); Plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 31); Brief in Support of Plaintiff's Motion for Default Judgment ("Mem. Supp.") (Dkt. 32); Declaration of Robert Geisler ("Geisler Decl.") (Dkt. 32-1); Declaration of Diana M. Bardes ("Bardes Decl.") (Dkt. 32-2); Supplemental Brief in Support of Plaintiff's Motion for Default Judgment ("Suppl. Br.") (Dkt. 37); and all attachments and exhibits submitted with those filings.

Industry, the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, the Sheet Metal Occupational Health Institute Trust, and the National Energy Management Institute Committee (collectively, "Plaintiffs" or the "Funds"), filed this lawsuit against Defendant New York Chutes, LLC ("NY Chutes") pursuant to sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1332(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947 (the "LMRA"), *as amended*, 29 U.S.C. § 185. (Dkt. 1 ¶ 1; Am. Compl. ¶ 1).

Following Plaintiffs' initiation of this suit, an answer was filed on behalf of Defendant NY Chutes. (Dkt. 5). However, the answer was not filed by a licensed attorney, nor had any licensed attorney entered an appearance on behalf of Defendant. *Id.* Plaintiffs filed a motion to strike the answer. (Dkt. 7). On January 13, 2023, the Court granted Plaintiffs' motion, holding that Defendant, as a limited liability corporation, is not permitted to proceed *pro se* and must be represented by licensed counsel. (Dkt. 12); *see MR Crescent City, LLC v. TJ Biscayne Holdings LLC*, 515 Fed. Appx. 198, 198 (4th Cir. 2013) ("LLCs, like corporations, are not permitted to proceed pro se.") (citation omitted). The Court struck the answer and ordered Defendant to enter its appearance and file a response to the complaint through licensed counsel within 21 days. (Dkt. 12).[2] The Court on multiple occasions advised Defendant that it was required to appear through licensed counsel and ordered it do so. (*See* Dkts. 16, 17, 25, 27).

On March 6, 2023, Plaintiffs moved for leave to amend their complaint, which the Court granted on March 7, 2023. (Dkts. 21, 25). The Amended Complaint reduced the amount Plaintiffs allege is owed to the Funds.[3] A copy of the motion to amend, with the Amended Complaint

---

[2] This order and all subsequent orders were mailed to Defendant at the address Defendant provided.

[3] The reduction in the amount Plaintiffs allege is owed to the Funds was the result of discussions

attached, was served on Defendant by mail and e-mail, as was the Court's order granting the motion to amend. *Id.* Consistent with Federal Rule of Civil Procedure 15, the Court gave Defendant 14 days to respond to the Amended Complaint, again ordering that any such response must be made through counsel. (Dkt. 25).

On March 8, 2023, the undersigned held an initial pretrial conference.[4] Counsel for Plaintiffs appeared. No counsel or any representative for Defendant appeared. (Dkt. 26).

Defendant never appeared or filed a response to the Amended Complaint through licensed counsel. As a result, Plaintiffs requested entry of default against Defendant on March 23, 2023. (Dkt. 29). The Clerk entered default against Defendant on March 30, 2023, and Plaintiffs filed the instant motion, accompanying memorandum, declarations, and supporting documentation. (Dkts. 30, 31, 32). When Defendant failed to appear at the hearing before the undersigned magistrate judge on April 21, 2023, the Court took this matter under advisement to issue this Report and Recommendation. (Dkt. 36).

## II. JURISDICTION, VENUE AND SERVICE OF PROCESS

### A. Jurisdiction and Venue

Before the Court can enter default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue.

*First*, the undersigned finds that this Court has proper subject-matter jurisdiction. A federal district court has subject-matter jurisdiction over ERISA actions pursuant to the jurisdictional provisions in 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c). Further, a federal district court has

---

between Plaintiffs' counsel and a corporate representative for the Defendant.

[4] The Court had previously issued a Scheduling Order on December 16, 2022.

original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, Plaintiffs asserted claims pursuant to ERISA and the LMRA, both federal statutes. (Am. Compl. ¶ 1). This Court accordingly has subject-matter jurisdiction over the claims in this action.

*Second*, this Court has personal jurisdiction over Defendant. Due to ERISA's nationwide service of process provision, personal jurisdiction is proper if a defendant has sufficient national contacts with the United States and it comports with the Fifth Amendment. *See* 29 U.S.C. 1132(e)(2); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443–44 (4th Cir. 2015) (citation omitted) ("Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment."); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. May 15, 1997). As discussed further herein, Plaintiffs served Defendant pursuant to Federal Rule of Civil Procedure 4. (Dkt. 4; *see also* Mem. Supp. at 5). Further, Defendant is incorporated in Delaware and its principal place of business is in Lebanon, New Jersey. (Am. Compl. ¶ 11). Therefore, Defendant has sufficient national contacts with the United States, and this Court has personal jurisdiction.

*Lastly*, the undersigned finds that venue is proper in this Court. For ERISA actions, venue is proper in the federal judicial district where the plan is administered. 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered."). Here, venue is proper because the Funds are administered in Falls Church, Virginia, within the Eastern District of Virginia. (Am. Compl. ¶¶ 5–9; Geisler Decl. ¶ 3).

### B. Service of Process

Next, before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served. Plaintiffs assert that they complied with service requirements under Rules 4(h) of the Federal Rules of Civil Procedure. (Mem. Supp. at 5). Under Rule 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

Here, on November 18, 2022, Plaintiffs' process server served Defendant by providing the summons, complaint, and related materials to Sean Rosa, an individual designated to receive service on behalf of NY Chutes. (Dkt. 4; *see also* Mem. Supp. at 5). There is no indication that this agent was authorized by a statute requiring service by mail, and therefore Plaintiffs were not required to mail a copy of the papers to the Defendant.

The undersigned finds that Plaintiffs' service comports with Federal Rule of Civil Procedure 4(c) and (h)(1)(B) and therefore the Defendant was properly served.

In addition, the Court finds that Defendant received actual notice of at least the initial Complaint, which included Plaintiff's claims of liability, as evidenced by the fact that a corporate representative attempted to file an answer on behalf of Defendant.

### III. GROUNDS FOR DEFAULT

Despite the attempt by representatives of Defendant to answer the complaint *pro se*, the Court may enter default judgment against Defendant.[5] "It is a long-standing principle that

---

[5] During the April 21, 2023 hearing of Plaintiffs' Default Judgment Motion, the undersigned permitted Plaintiffs to submit supplemental briefing regarding the issuance of default judgment under these circumstances. On May 1, 2023, Plaintiffs submitted supplemental briefing. (Dkt.

5

corporations, partnerships, associations, or any other 'artificial entity' 'may appear in the federal courts only through licensed counsel.'" *Kabob Palace, Ltd. v. Kabob Place*, No. 1:16–cv–00658–LO–MSN, 2017 WL 631551, at *3 (E.D. Va. Jan. 31, 2017), *report and recommendation adopted by* 2017 WL 631582 (E.D. Va. Feb. 15, 2017); *see also In re Tamojira, Inc.*, 20 Fed. Appx. 133, 133–34 (4th Cir. 2001) ("[I]t is well settled that a corporation must be represented by an attorney in federal court."). Therefore, the Court struck the answer filed on behalf of Defendant, as it was not submitted through licensed counsel and Defendant had not appeared through licensed counsel. (Dkt. 12). "[W]here a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55." *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975) (citations omitted); *see also Kabob Palace*, 2017 WL 631551, at *3 (finding the *pro se* answer of a "business entity" defendant to be "deficient" and therefore holding that "[d]efault judgment is [] appropriate pursuant to Federal Rule of Civil Procedure 55"); *Allied Colloids, Inc. v. Jadair, Inc.*, 139 F.3d 887 (4th Cir. 1998) (affirming district court's entry of default judgment against defendant corporation that attempted to answer through non-counsel, had that answer rejected, and failed to answer through counsel licensed to practice in the court).

Therefore, the caselaw squarely supports the Court's ability to enter default judgment against Defendant under these circumstances. The Court properly struck the *pro se* answer by Defendant and on multiple occasions ordered Defendant to appear and answer through licensed counsel. Defendant failed to do so.

## IV. <u>FINDINGS OF FACT AND PROPOSED FINDINGS OF LAW</u>

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D.

---

37).

Va. Mar. 26, 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. Feb. 5, 2003) (citations omitted).

Based on the Amended Complaint, Plaintiffs' Motion for Default Judgment and supporting Memorandum, the Declaration of Robert Geisler, the Declaration of Diana M. Bardes, and the supporting documents submitted with these filings, the undersigned makes the following findings of fact and proposed findings of law.

### A. The Parties

Plaintiffs are four employee benefits funds: (1) the Sheet Metal Workers' National Pension Fund ("NPF"); (2) the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"); (3) the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"); (4) the Sheet Metal Occupational Health Institute Trust, and Board of Trustees ("SMOHIT"); and (5) the National Energy Management Institute Committee ("NEMIC"). NPF is an employee pension benefit plan within the meaning of sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3). ITI and SASMI are employee welfare benefit plans within the meaning of sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3). NPF, ITI, and SASMI are all multiemployer plans within the meaning of section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. SMOHIT is a

labor management health and safety organization serving the sheet metal industry and established under Section 302(c)(5) of the LMRA 29 U.S.C. § 186(c)(5). NEMIC is a labor management committee established pursuant to section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). The trustees of the Funds are fiduciaries and may bring claims on behalf of their participants and beneficiaries under ERISA and the LMRA. (Am. Compl. ¶¶ 5–9, Geisler Decl. ¶ 3); *see also* Fed. R. Civ. P. 17(a).

Defendant NY Chutes is a company incorporated in Delaware with its principal place of business in Lebanon, New Jersey. (Am. Compl. ¶ 11). Defendant is an employer within the meaning of 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5) and has engaged in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. §§ 1002(11) and (12). *Id.*

**B.     Defendant's Liability**

At all relevant times, Defendant employed individuals represented for collective bargaining purposes by the International Association of Sheet Metal, Air, Rail and Transportation Union, Local Union 28 ("Local 28"). (Am. Compl. ¶ 12). Local 28 negotiated and entered into a collective bargaining agreement (the "2014 CBA") with a third-party, the Sheet Metal & Air Conditional Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA"), effective July 1, 2014 through July 31, 2017. (Geisler Decl. ¶ 4; *id.* at Exh. 1). On October 6, 2015, Defendant entered into a Memorandum of Understanding (the "MOU") with Local 28, agreeing to be bound by the "terms, conditions, and revisions" of the 2014 CBA, from the date of execution of the MOU to July 31, 2017. (Am. Compl. ¶ 13; Geisler Decl. ¶ 4; *id.* at Exh. 2). SMACNA subsequently entered into a Memorandum of Agreement with Local 28 establishing a "Successor CBA," which incorporated the 2014 CBA, with amendments, effective August 1, 2017 through July 31, 2020 (the "2017 CBA"). (Geisler Decl. ¶ 5; *id.* at Exh.

3). SMACNA and Local 28 later agreed to extend the 2017 CBA three additional months, through October 31, 2020. (Geisler Decl. ¶ 5; *id.* at Exh. 4).

Defendant, pursuant to the MOU and applicable CBA terms and conditions, was required to submit monthly "remittance reports" and "fringe benefits contributions" to the Funds for "all hours worked or paid on behalf of its covered employees within the jurisdiction of Local 28." (Geisler Decl. ¶ 6; *id.* at Exh. 1, Art. XII(B), Secs. 21–23; Am. Compl. ¶ 13). Furthermore, Defendant was prohibited from avoiding such contributions by subcontracting covered work to non-union employers. (Geisler Decl. ¶ 6; *id.* at Exh. 1, Art. III, Sec. 2; Am. Compl. ¶ 14). These reports and contributions are self-reported by employers such as Defendant and "rely on the honesty and accuracy" of the employers. (Am. Compl. ¶ 16). However, the Funds may audit the employer to determine the accuracy of their reporting. (Am. Compl. ¶ 18; *see* Geisler Decl. Exh. 1, Art. XII(B), Sec. 21).

In short, Defendant's obligation to make contributions to the Funds and adhere to subcontracting rules was predicated upon an agreement between Defendant and Local 28, effective October 6, 2015 through July 31, 2017.

    1. *Defendant's Alleged Violations*

The Funds conducted an audit of Defendant's payroll records for the period of July 2016 through December 2020 and sent Defendant notice of the audit and demand for payment of delinquent contributions on August 29, 2022. (Am. Compl. ¶ 20; Geisler Decl. ¶ 19; *id.* at Exh. 7). Subsequently, the Funds received "additional information" from Defendants that caused the Funds to revise their original audit. (Geisler Decl. ¶ 20; *id.* at Exh. 8). The revised audit determined that Defendant committed two violations. First, Defendant allegedly failed to report hours worked by employees who engaged in covered work. (Am. Compl. ¶ 20; Geisler Decl.

9

¶ 22). Second, Defendant allegedly used subcontractors to perform covered work. (Am. Compl. ¶ 20; Geisler Decl. ¶ 21). The former relates to Defendant's failure to report additional hours worked on the "Wilkinson Hi-Rise Job," which occurred in March 2019, resulting in an alleged delinquent contribution amount of $10,976.41. (Geisler Decl. Exh. 8). The latter relates to Defendant's use of non-union subcontractors for covered work in April, May, June, August, September, November, and December of 2020, resulting in an alleged delinquent contribution amount of $1,601.35. *Id.*

    2. *Analysis*

To recommend default judgment and an award of the alleged delinquent contributions – plus interest, liquidated damages, and attorney's fees – the undersigned must find that Plaintiffs have plausibly alleged Defendant was bound by an agreement to make such contributions. Plaintiffs have alleged in their Amended Complaint that "[a]t all times relevant to this action, Defendant was signatory to, and bound by, a collective bargaining agreement … with the Union." The Declaration by Mr. Geisler, submitted with Plaintiff's Motion for Default Judgment, demonstrates that this conclusory allegation is not supported by specific facts and is, in fact, inconsistent with evidence submitted by Plaintiffs.

As recounted already, third-party entities, referred to as SMACNA, entered into the 2014 CBA with Local 28, which was effective through July 31, 2017. Subsequently, in October of 2015, Defendant entered into the MOU with Local 28, which bound Defendant to the "terms, conditions, and revisions" of the 2014 CBA, "covering the EMPLOYEES [of Defendant] for the period from the date of execution of this MEMORANDUM to July 31, 2017." (Geisler Decl. Exh. 2). Indeed, within the one-page MOU, the date of July 31, 2017 is repeated four times as the end-date of the agreement between Defendant and Local 28. *Id.* While Plaintiffs cite and provide copies of

additional agreements between third-party SMACNA and Local 28 that created and then extended "a new collective bargaining agreement," also referred to as a "Successor CBA," between those entities (*see* Geisler Decl. Exhs. 3–4), Plaintiffs do not provide any additional agreement between Defendant and Local 28 that would have extended Defendant's obligation to pay the Fund beyond July 31, 2017. Plaintiffs never allege there was an additional agreement between Defendant and Local 28. Nor do Plaintiffs allege facts that would suggest Defendant is somehow bound to third-party SMACNA's agreement to enter a successor CBA.

Plaintiffs' conclusory allegation that Defendant was bound to a CBA "[a]t all times relevant to this action," particularly in light of conflicting evidence provided by Plaintiffs, will not be accepted by the Court. *See Evans v. Napolitano*, 466 Fed. Appx. 190, 191 (4th Cir. 2012) ("A court is not, however, required 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences' or 'allegations that contradict matters properly subject to judicial notice or by exhibit.'") (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). Therefore, the undersigned finds that Plaintiffs have failed to plead that Defendant was bound to the reporting or contribution terms and conditions at any time beyond July 31, 2017. Because Plaintiffs' claimed damages result only from conduct allegedly occurring in 2019 and 2020 (*see* Geisler Decl. Exh. 8), Plaintiffs fail to allege any plausible claim for liability against Defendant.

## V. **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends the Court DENY Plaintiffs' Motion for Default Judgment. The undersigned further recommends that the Court require Plaintiffs to show cause before the undersigned and within twenty-one days of entry of the Court's order, why the underlying cause of action should not be dismissed without prejudice.

## VI. **NOTICE**

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

July 5, 2023
Alexandria, Virginia