UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, and the BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE, <br><br>3180 Fairview Park Drive, Suite 400 <br>Falls Church, VA 22042 <br><br> Plaintiffs, <br><br> v. <br><br>NEW YORK CHUTES, LLC <br><br>c/o Registered Agents, Inc. <br>418 Broadway, Suite R <br>Albany, NY 12207 <br><br> Defendant. | CIVIL ACTION NO. <br>1:22-cv-01294-PTG-WEF <br><br><br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br>**U.S. Department of Labor** <br>**Attn: Assistant Solicitor** <br>**for Plan Benefits Security** <br>**200 Constitution Ave., N.W.** <br>**Washington, DC 20002** <br><br>**U.S. Department of Treasury** <br>**Attn: Secretary of the Treasury** <br>**1500 Pennsylvania Avenue, NW** <br>**Washington, D.C. 20220** |

## SECOND AMENDED COMPLAINT

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the

1

National Energy Management Institute Committee ("NEMIC" and together with NPF, ITI, SASMI, and SMOHIT, referred to as "the Funds"), hereby complain as follows:

## Introduction

1. This is a civil action brought by employee benefit plans/trust funds or joint labor management organizations, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendant awarding delinquent contributions, accrued interest, liquidated damages, audit fees, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Funds.

## Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(c), as the Plaintiff Funds are administered in this district with their principal place of business in Falls Church, Virginia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Amended Complaint will be served upon the Secretary of United States Department of Labor and the

Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

6. Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational

benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

       7.     Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Section 3(1), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material herein, has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 3180 Fairview Park Drive, Suite 100, Falls Church, VA 22042.

8. Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

9. Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

10. The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

11. At all times relevant to this action, Defendant NY Chutes, LLC ("NY Chutes"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Defendant has been incorporated in the state of Delaware with a principal place of business at 5 Honeyman Road, Lebanon, NJ 08833.

**Factual Background**

12. At all times relevant to this action, Defendant employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 28 ("Local 28" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

13. At all times relevant to this action, Defendant was bound by a collective bargaining agreement ("Agreement" or "CBA") with the Union.

14. The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA") entered into a collective bargaining agreement with the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union No. 28 ("Union" or "Local 28") effective for the period of August 1, 2014 through July 31, 2017 ("2014 CBA"). NY Chutes executed a Memorandum of Understanding binding them to the CBA between SMACNA and Local 28 on October 6, 2015, which was effective through at least July 31, 2017.

15. SMACNA and Local 28 entered into a Memorandum of Agreement modifying and extending the terms of the 2014 CBA through July 31, 2020 ("2017 CBA"). SMACNA and Local 28 then agreed to extend the 2017 CBA through October 31, 2020. SMACNA and Local 28 then negotiated a successor agreement effective for the period of November 1, 2020 through October 31, 2021 ("2020 CBA").

16. In the absence of a signed writing specifically binding an employer to a collective bargaining agreement, an employer can adopt a collective bargaining agreement or other writing

by conduct manifesting an intention to be bound by its terms. *Bd. of Trs. v. Four-C-Aire, Inc.*, 42 F.4th 300, 310 (4th Cir. 2022); *Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services., Inc.*, 791 F.3d 436 (4th Cir. 2015).

17. Here, Defendant evidenced an intention to be bound by the 2017 and 2020 CBAs. Specifically:

A. NY Chutes used the Funds' internet payment system consistently during the period of October 2015 through February 2023 to meet its reporting obligations to the Funds. Specifically, NY Chutes used the internet payment system to report covered hours and to pay corresponding contributions for the period of March through July 2019 and it used the internet payment system to report that zero covered hours were worked for the periods of August 2017 through February 2019 and August 2019 through December 2020. The reporting of zero hours in months where a company self-reports that it performed no covered work is required by the CBAs at Article XII, Section 21.E.

B. Employees of NY Chutes for whom hours were reported accrued service credit for those hours, which will be used to calculate their pension benefit, if any, upon their retirement.

C. NY Chutes also reported hours for the period of March 2019 through July 2019 to Local 28 and the Local Funds. NY Chutes paid the corresponding working assessments on behalf of its covered employees for those reported hours.

D. The 2014, 2017 and 2020 CBAs all obligate employers to comply with payroll audits conducted by the NPF to audit their payroll and wage records to determine the accuracy of contributions made to the Fund. Here, NY Chutes complied with an audit of its payroll and wage records covering the period of July 2016 through December 31,

2020 for both the National Funds and the Local Funds. Calibre CPA Group performed the audit for the Funds. In its audit report, Calibre reported that "Mrs. Fox provided the necessary documentation to complete the audit."

  E. NY Chutes acknowledged its obligations under the 2017 and 2020 CBAs in various email communications. For example, on March 30, 2022, in response to a question from Calibre about work performed by an employee named Edwin in 2019, NY Chutes described the employee as performing work "on the union job". Additionally, on April 22, 2019, NY Chutes acknowledged that it worked "one union job in 2019." It then further alleged that since that time, "our business has been in service and repair for non-union customers."

  F. NY Chutes sent a letter to Local 28 on December 29, 2021 serving as its "official request to withdraw from the SMW Union Local 28 effective December 31, 2021." NY Chutes reiterated its understanding in a March 28, 2022 email, which was provided to the Funds, in which it stated that "We should be out of the Union and the "zero" weekly reporting requirements by now. We requested withdrawal effective 12/31/2021." By requesting withdrawal effective December 2021, NY Chutes acknowledged that it was bound by the CBAs through that date.

18. Accordingly, Defendant adopted the 2017 and 2020 CBAs by conduct manifesting an intention to be bound by their terms.

19. Pursuant to Article XII, Sections 21-23 of the CBAs, employers which are bound to the CBAs are obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours paid on behalf of its covered employees within the jurisdiction of Local 28.

20. Article III, Section 2 of the CBAs prohibits bound employers from subcontracting covered work to employees outside of the bargaining unit.

21. Pursuant to the Agreements, Defendant is obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents").

22. Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

23. The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed and are delinquent if received thereafter.

24. Article V, Section 3 of the governing Trust Agreement and Section V of NPF's Procedures for the Collection of Contributions both provide that the Funds may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that such employer has remitted the appropriate amount of contributions to the Funds.

25. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if Defendant fails to timely submit the contractually required remittance reports and contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, Defendant is required to pay the following amounts to the Funds:

    a. Interest on the delinquent contributions at a rate of .0233% per day, compounded daily;

      b.      Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed;

      c.      Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

      d.      The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

26.      For the months of July 2016 through December 2020, a payroll audit of NY Chutes demonstrates that Defendant employed employees within the jurisdiction of Local 28 for whom contributions were owed to the Funds and failed to make all the required contributions, despite its obligation to do so. In addition, the audit shows that Defendant violated the terms of the Agreement by subcontracting covered work to non-union employers. Although the audit covers the period of July 2016 through December 2020, the amounts due correspond to covered work performed in 2019 and 2020. As a result, Defendant owes contributions to the Funds under the Agreements, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

**Count I**
*Amounts Owed Pursuant to Audit*

27.      Plaintiffs reallege and incorporate Paragraphs 1 through 26.

28.      This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

29.      Defendant is obligated, under the terms of the CBAs, to provide contributions to the Funds on behalf of its covered employees.

30. In addition, Article II, Section 2(A) of the Agreement, expressly prohibits Defendant from subcontracting any covered work to employer(s) not in the collective bargaining unit. Defendant has failed and refused to fulfill its contractual obligations for owed contributions and by subcontracting covered work as demonstrated by a payroll audit conducted on Defendant by the Funds for the period of July 2016 through December 2020, showing amounts due in 2019 and 2020.

31. A plan may seek damages for an employer's violation of a subcontracting provision. *See Walsh v. Schlecht*, 429 U.S. 401, 407 (1977). In such circumstances, the Funds calculate the required payments due from the delinquent employer measured by the hours worked by the subcontractor's employees, regardless of whether the subcontractor's employees benefit from such payments. *See id.* at 407; *see also Sheet Metal Workers' Health & Welfare Fund of N.C. v. Stromberg Metal Works, Inc.,* No. 5:21-CV-101-BO, 2021 BL 362052, at *10 (E.D.N.C. Sept. 22, 2021).

32. As such, Defendant owes contributions, interest, and liquidated damages to the Funds for its failure to fulfil its contractual obligations. While contributions remain unpaid, interest continues to accrue on these delinquent contributions and audit fees have been assessed pursuant to the Funds' governing documents.

33. Specifically, the audit revealed that NY Chutes owes contributions in the amount of $12,577.76. In addition to the contribution amounts found due, NY Chutes owes $4,628.87 in interest (calculated through March 6, 2023), $2,515.55 in liquidated damages, and $2,955.50 in audit testing fees. In total, NY Chutes owes $22,677.68 to the Funds for unpaid contributions, interest, liquidated damages, and testing fees.

34. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

35. Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Defendant to obtain the outstanding contributions from Defendant. Despite these efforts, Defendant has not resolved its delinquency. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the Funds, and pay the delinquent and unpaid contributions, liquidated damages, interest, and late fees due on the delinquent and unpaid contributions.

36. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

**WHEREFORE**, Plaintiffs request a judgment against Defendant for all amounts and reports due to the Funds as follows:

1. Declare that Defendant is delinquent in remitting owed contributions to the Funds pursuant to the CBAs;

2. Declare that Defendant violated the subcontracting provision of the Agreement and owes contributions to the Funds;

3. Award Plaintiffs on behalf of the Funds a judgment for Defendant's delinquent contributions found to be due by the audit in the total amount of $12,577.76;

4. Enter judgment against Defendant for interest on all delinquent contributions at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $4,628.87;

5. Enter judgment against Defendant for liquidated damages in an amount equal to the greater of interest on the delinquent contributions calculated at the above rate, or 20% of the delinquent contributions in the amount of at least $2,515.55;

6. Enter judgment against Defendant for audit testing fees in the amount of $2,955.50;

7. Enter judgment for all attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

8. Award such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Diana M. Bardes
Diana M. Bardes, Bar No. 81831
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
dbardes@mooneygreen.com
*Counsel for Plaintiff Funds*

Dated: September 29, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2023, a true and correct copy of the foregoing SECOND AMENDED COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, AUDIT TESTING FEES, ATTORNEYS FEES, AND COSTS was served via first class mail, postage prepaid, and email to the following address for Defendant:

New York Chutes
P.O. Box 234
Lebanon, NJ 08833
nychutes@gmail.com

I also hereby certify pursuant to 29 U.S.C. § 1132(h) that on this 6th day of March, 2023, a true and correct copy of the foregoing AMENDED COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, AUDIT TESTING FEES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                                              /s/ Diana M. Bardes
                                              Diana M. Bardes