IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*<br><br>      **Plaintiffs,**<br><br>v.<br><br>NEW YORK CHUTES, LLC,<br><br>      **Defendant.** | Case No. 1:22-cv-1294-PTG-WEF |

## BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

  Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Workers' Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC"), (NPF, ITI, SASMI, SMOHIT, and NEMIC collectively referred to as "the Funds"), submit this Brief in Support of their Motion for Default Judgment against Defendant New York Chutes, LLC ("NY Chutes") for unpaid contributions, liquidated damages, interest, audit fees and attorneys' fees and costs incurred by the Funds pursuant to the collective bargaining agreements to which Defendant NY Chutes was bound, either by signature or by adoption by conduct.

## STATEMENT OF FACTS

  **A.  The Parties and the Applicable Agreements**

  Plaintiffs are employee benefit plans/trust funds or joint labor-management organizations administered from offices located in Falls Church, Virginia. *See* Second Amended Complaint ¶¶

5-9; *see* Declaration of Robert Geisler at ("Geisler Decl.") ¶ 3.[1] The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). Defendant NY Chutes is an employer incorporated in the state of Delaware. *See* Second Am. Compl. ¶ 11.

The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA") entered into a collective bargaining agreement with the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union No. 28 ("Union" or "Local 28") effective for the period of August 1, 2014 through July 31, 2017 ("2014 CBA"). Geisler Decl. ¶ 4; *See* Ex. 1. NY Chutes executed a Memorandum of Understanding binding them to the CBA between SMACNA and Local 28 on October 6, 2015, which was effective through at least July 31, 2017. Geisler Decl. ¶ 4; *See* Ex. 2.

SMACNA and Local 28 entered into a Memorandum of Agreement modifying and extending the terms of the 2014 CBA through July 31, 2020 ("2017 CBA"). Geisler Decl. ¶ 5; Ex. 3. SMACNA and Local 28 then agreed to extend the 2017 CBA through October 31, 2020. SMACNA and Local 28 then negotiated a successor agreement effective for the period of November 1, 2020 through October 31, 2021 ("2020 CBA"). *See* Declaration of Robert Geisler dated July 19, 2023 ("July 2023 Geisler Decl.") attached hereto at, ¶ 5; *see* Ex. A[2].

---

[1] The Declaration of Robert Geisler dated March 30, 2023 and Exhibits 1 through 8 referenced herein are attached to the Plaintiffs' First Motion for Default Judgment. *See* Dkt. No. 32-1.
[2] The July 2023 Declaration of Robert Geisler and Exhibits A through D referenced herein are attached hereto.

2

Pursuant to Article XII, Sections 21-23 of the CBAs, employers which are bound to the CBAs are obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours paid on behalf of its covered employees within the jurisdiction of Local 28. Ex. 1, Art. XII, Secs. 21-23. Further, Article III, Section 2 of the CBAs prohibits bound employers from subcontracting covered work to employees outside of the bargaining unit. Geisler Decl. ¶ 6; Ex. 1, Art. III, Sec. 2.

B.     **The Funds' Governing Documents**

The CBAs and Sheet Metal Workers' National Pension Fund Trust Document ("Trust Document"), which the CBAs incorporate by reference,[3] provide rules on payment and remedies for a delinquency. *See* Am. Compl. ¶ 21; Geisler Decl., ¶ 7.

The rules and remedies are as follows:

- Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer.

- A completed remittance report and accompanying payment must be submitted to the Funds by no later than the twentieth (20th) day after the end of each calendar months (the "Due Date") and are delinquent if received thereafter.

- Interest is payable on any delinquent contributions is calculated at a rate of 0.0233% per day, compounded daily until paid.

- Liquidated damages are payable equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed.

---

[3] The delinquency/collection rules in the Pension Fund Trust Document have been adopted by the other National Funds pursuant to internal management agreements. Geisler Decl., ¶ 7.

- Liquidated damages are payable equal to the greater of: interest on all delinquent contributions; or twenty percent (20%) of the contributions that were unpaid on the date the lawsuit was filed.
- All attorneys' fees and costs that the Funds incur as a consequence of an employer's failure to comply with its obligations under the CBA and the Trust Document.

*See* Geisler Decl., ¶¶ 7, 12.

Article V, Section 3 of the governing Trust Agreement and Section B of the Introduction to the Collection Policy both provide that the Funds may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that such employer has remitted the appropriate amount of contributions to the Funds pursuant to its collective bargaining agreement. Ex. 5, Art. V; Ex. 6, Intro. The CBAs also state that the Funds have the authority to audit a participating employer. Ex. 1, Art. XII(B), Sec. 21(A) & 25.

When selected for an audit, participating employers are directed to make available certain documents to the auditor, including original time cards/sheets, payroll registers, individual earnings records, 941's, state U/C's, W-2's, W-3's and 1099's, cash disbursement journals, National Benefit Funds remittance reports/records, remittance reports for any other fringe benefit fund to which the Employer contributes, personnel records, and such other records as are necessary to complete the audit. Ex. 5, Sec. 5(c); Geisler Decl. ¶ 11.

    **C.**    **NY Chutes Compliance with the 2017 and 2020 CBAs**

NY Chutes used the Funds' internet payment system consistently during the period of October 2015 through February 2023 to meet its reporting obligations to the Funds. July 2023 Geisler Decl. ¶¶ 7-11, Ex. C. Specifically, NY Chutes used the internet payment system to report covered hours and to pay corresponding contributions for the period of March through July 2019

and it used the internet payment system to report that zero covered hours were worked for the periods of August 2017 through February 2019 and August 2019 through December 2020. July 2023 Geisler Decl. ¶¶ 12, 13, 15, Ex. C, D. The reporting of zero hours in months where a company self-reports that it performed no covered work is required by the CBAs at Article XII, Section 21.E. *See* Exs. 1, 3, A.

Employees of NY Chutes for whom hours were reported accrued service credit for those hours, which will be used to calculate their pension benefit, if any, upon their retirement. July 2023 Geisler Decl. ¶ 14.

NY Chutes also reported hours for the period of March 2019 through July 2019 to Local 28 and the Local Funds. *See* Declaration of Eric Meslin ("Meslin Decl."), at ¶ 9, Meslin Ex. 2.[4] NY Chutes paid the corresponding working assessments on behalf of its covered employees for those reported hours. *Id.* at ¶ 8.

The 2014, 2017 and 2020 CBAs all obligate employers to comply with payroll audits conducted by the NPF to audit their payroll and wage records to determine the accuracy of contributions made to the Fund. *See* Ex. 1, 2014 CBA at Article XII, Section 21.D; Ex. 3, 2017 CBA (leaving relevant language in the 2014 CBA unchanged); Ex. A, 2020 CBA at Article XII, Section 21.D. Here, NY Chutes complied with an audit of its payroll and wage records covering the period of July 2016 through December 31, 2020 for both the National Funds and the Local Funds. *See* July 2023 Geisler Decl. ¶ 17; Ex. 7; Meslin Decl., ¶ 10, Meslin Ex. 3. Calibre CPA Group performed the audit for the Funds. July 2023 Geisler Decl. ¶ 17. In its audit report, Calibre reported that "Mrs. Fox provided the necessary documentation to complete the audit." Ex. 7, Dkt.

---

[4] The Declaration of Eric Meslin and Meslin Exhibits 1 through 3 referenced herein are attached hereto.

No. 32-1, p. 145.

NY Chutes acknowledged its obligations under the 2017 and 2020 CBAs in various email communications. For example, on March 30, 2022, in response to a question from Calibre about worked performed by an employee named Edwin in 2019, Ex. 7, Dkt. No. 32-1, p. 155, NY Chutes described the employee as performing work "on the union job," Ex. 7, Dkt. No. 32-1, p. 154. Additionally, on April 22, 2019, NY Chutes acknowledged that it worked "one union job in 2019." Ex. 7, Dkt. No. 32-1, p. 157. It then further alleged that since that time, "our business has been in service and repair for non-union customers." *Id.*

Most importantly, NY Chutes sent a letter to Local 28 on December 29, 2021 serving as its "official request to withdraw from the SMW Union Local 28 effective December 31, 2021." Meslin Decl., ¶ 7, Meslin Ex. 1. NY Chutes reiterated its understanding in a March 28, 2022 email, which was provided to the Funds, in which it stated that "We should be out of the Union and the "zero" weekly reporting requirements by now. We requested withdrawal effective 12/31/2021." Ex. 7, Dkt. No. 32-1, p. 157. By requesting withdrawal effective December 2021, NY Chutes acknowledged that it was bound by the CBAs through that date.

    **D.**    **Amounts Owed Pursuant to Audit**

The Funds informed NY Chutes of the results of the audit in April 2022. Geisler Decl., ¶ 19; Ex. 7. In response to additional information provided by NY Chutes, in February 2023, the Funds revised the audit. Geisler Decl., ¶ 20; Ex. 8.

The revised audit seeks amounts due resulting from two contract violations. First, the revised audit determined that NY Chutes failed to remit reports and contributions for covered work at a specific job site. Geisler Decl., ¶ 22; Ex. 8. Second, the audit showed that NY Chutes used subcontractors to perform covered work in violation of Article III, Section 2 of the CBAs. Geisler

6

Decl., ¶ 21; Ex. 8. Specifically, based on invoices provided by NY Chutes in response to the audit, the Funds' auditors determined that subcontractors performed covered work. *Id.* These invoices were then used to determine contributions due for the subcontracting violation and interest and liquidated damages were assessed in accordance with the Funds' governing documents. *Id.*

As a result of the audit for the period of July 2016 through December 2020, NY Chutes owes $12,577.76 in contributions, $5,668.73 in interest (calculated through November 13, 2023), and $5,668.73[5] in liquidated damages. *See* Declaration of Robert Geisler dated November 15, 2023 ("November 2023 Geisler Decl.") attached hereto at, ¶ 3; Ex. 8. Because amounts were found due and owing, Defendant is also responsible for the payment of $2,955.50 in audit testing fees pursuant to Section 1 of the Collections Policy. November 2023 Geisler Decl., ¶ 3; Ex. 6, Sec. 1(c). In total, Defendant owes $26,870.72 to the Funds pursuant to the audit. November 2023 Geisler Decl., ¶ 3.

### E.   Procedural History

On November 15, 2022, Plaintiffs filed a Complaint against Defendant to collect delinquent contributions, liquidated damages, interest, audit fees, and attorneys' fees and costs. Defendant was served with the summons, Complaint, and related materials on November 21, 2022 in accordance with Rules 4(c) and (h) of the Federal Rules of Civil Procedure. *See* Aff. of Process Server, Dkt. No. 4. Plaintiffs filed a Motion for Leave to File an Amended Complaint on March 6, 2023. *See* Dkt. No. 21. On March 8, 2023, the Court granted Plaintiffs' Motion for Leave to Amend the Complaint and ordered that Defendant, through counsel, shall file an answer or other

---

[5] The Amended Complaint states liquidated damages would be calculated as the greater of 20% of the delinquent contributions or the interest due. Am. Compl. ¶ 19(c). As interest is greater than 20% of the delinquent contributions in this case, the liquidated damages now total $5,668.73.

responsive pleading within 14 days of the entry of the order. *See* Dkt. No. 25. Accordingly, Defendant's Answer or other responsive pleading was due on March 22, 2023.

Plaintiffs filed a Request and Affidavit for Clerk's Entry of Default on March 23, 2023. *See* Request & Aff. for Clerk's Entry of Default, Dkt. No. 29. The Clerk of Court entered default against Defendant on March 30, 2023. *See* Clerk's Entry of Default, Dkt. No. 30. On the same day, the Funds filed a motion for default judgment, which Magistrate Judge Fitzpatrick heard on April 21, 2023. Defendant failed to appear at the hearing.

On July 5, 2023, Judge Fitzpatrick issued his report and recommendations. He found that this court had subject matter jurisdiction and personal jurisdiction, the venue was proper, and the Defendant was properly served. R&R, p. 3-5. He also found that default judgment may be entered against Defendant despite its attempt to appear *pro se* in this matter. R&R, p. 6. Judge Fitzpatrick found, however, that the Funds were not entitled to judgment by default because the Funds "failed to plead that Defendant was bound to the reporting or contribution terms and conditions at any time beyond July 31, 2017." R&R, p. 11. He came to this conclusion because Defendant signed an MOU which he found expired on July 31, 2017 and the Funds did "not provide any additional agreement between Defendant and Local 28 that would have extended Defendant's obligation to pay the Fund" beyond the expiration of the 2017 MOU. *Id.* Because the Funds seek amounts due for periods following July 31, 2017, default judgment was not appropriate on the record.

Plaintiffs subsequently filed a renewed motion for default judgment setting forth an alternative basis for liability – that Defendant bound itself to the later collective bargaining agreements by conduct. Dkt. No. 49, 50. At hearing on the motion, Judge Fitzpatrick expressed concerned that the adoption by conduct theory was not adequately pled in the complaint so as to allow for default judgment. Dkt. No. 52. Accordingly, on September 29, 2023, Plaintiffs withdrew

8

the pending motions for default judgment. Dkt. No. 54. The same day, Plaintiffs filed a motion for leave to file a Second Amended Complaint which adequately pled the adoption by conduct theory. Dkt. No. 55. The motion was granted and Plaintiffs' Second Amended Complaint docketed on October 3, 2023. Dkt. Nos. 58 & 59.

On October 11, 2023, the Second Amended Complaint and related materials were served on Defendant in accordance with Rule 4(c) and (h) of the Federal Rules of Civil Procedure. See Affidavit of Process Server, Dkt. No. 61. Rule 15(a)(3) of the Federal Rules of Civil Procedure provides Defendant fourteen (14) days in which to file an answer or otherwise respond to the Second Amended Complaint.  Accordingly, Defendant's Answer or other responsive pleading was due on October 25, 2023. Defendant failed to file an answer or other responsive pleading.

Plaintiffs filed a Request and Affidavit for Clerk's Entry of Default on November 1, 2023. Dkt. No. 62. The Clerk of Court entered default against Defendant on November 7, 2023. Dkt. No. 63.

## ARGUMENT

**I.  STANDARD FOR DEFAULT JUDGMENT**

The Court may enter a default judgment against a defendant who fails to defend its case. *U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment against the defendant for relief claimed plus costs. Fed. R. Civ. P. 55(b)(2). A default judgment is appropriate for a party against whom a judgment for affirmative relief is sought and has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure. *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992). Further, where a defendant fails to respond to the complaint, all factual allegations in the complaint are deemed admitted. *Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th

Cir. 2001); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting the factual allegations in complaint). In this case, Defendant has failed to defend in this case and a default judgment in favor of the Plaintiffs is appropriate.

## II.     DEFENDANT ADOPTED THE 2017 AND 2020 CBAS BY CONDUCT.

Although it has been the position of Local 28 and the Funds that Defendant is signatory to the series of CBAs in this matter, even if Defendant was only signatory to a CBA expiring on July 31, 2017, it was still bound to the successor CBAs by its conduct. In the absence of a signed writing specifically binding an employer to a collective bargaining agreement, an employer can adopt a collective bargaining agreement or other writing by conduct manifesting an intention to be bound by its terms. In *Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services., Inc.*, 791 F.3d 436 (4th Cir. 2015), this Court adopted the majority view[6] that an employer adopts a collective bargaining agreement "by conduct manifesting an intention to be bound by its terms." 791 F.3d at 448. Then, after holding that the particular employer had satisfied that standard, this Court identified only two facts in support of its finding: (1) the employer signed a letter of assent that required it to contribute to the pension plan as required by a collective bargaining agreement and (2) the employer made the required contributions to the pension plan. *Id.* at 447-48.

---

[6] Consistent with this Court, the Fifth, Seventh, Ninth, Tenth and Eleventh Circuits hold that an intent to bound can be inferred from conduct. *See Plumbing Services*, 791 F.3d at 448; *Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004); *S. Cal. Painters & Allied Trade District Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1131–33 (9th Cir. 2004); *Carpenters Amended & Restated Health Benefit Fund v. Holleman Constr. Co.*, 751 F.2d 763, 770 (5th Cir. 1985); *Trs. of Atl. Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp.*, 724 F.2d 1458, 1459-60 (11th Cir. 1983); *Arco Electric Co. v. NLRB*, 618 F.2d 698, 699–700 (10th Cir. 1980).

Here, the same two facts are present. NY Chutes signed the 2015 MOU, which required reporting and contributions to the Funds, and it reported its hours to the Funds and made those contributions to the Funds when it self-reported covered hours. Accordingly, NY Chutes adopted the 2017 and 2020 CBAs by conduct.

Although that is enough, the court can look at "other actions that might signal an employer's intent to bind itself to a collective bargaining agreement. Evidence that an employer paid union wages, remitted union dues, or submitted itself to union jurisdiction (such as in a grievance procedure) all support adoption by conduct." *Bd. of Trs. v. Four-C-Aire, Inc.*, 42 F.4th 300, 310 (4th Cir. 2022). In *Bd. of Trs. v. Four-C-Aire, Inc.*, the Fourth Circuit considered that the employer deducted dues from its employees' pay, responded to letters regarding late remittances, and complied with the Fund's payroll audit. *Id.* Similar evidence can be found in this case. Here, NY Chutes deducted working assessments (commonly known as dues) from its employees' pay. Meslin Decl. ¶ 8. It complied with the payroll audit of the National Funds and Local Funds and corresponded at length with the auditors and the Local Funds regarding the audit and its reporting requirements. Meslin Decl. ¶ 10; Geisler Decl. ¶¶ 19-21; Ex. 7, at 15-31. Its employees also earned service credit from the NPF for work performed during the covered period. July 2023 Geisler Decl. ¶ 14.

In *Four-C-Aire*, the Fourth Circuit found communications between the employer and the union telling. It recounted that "after the company first tried to end its relationship with Local 58, . . . the union's business manager responded that 'its attempt to terminate the collective bargaining agreement was invalid and ineffective, . . . . [The company] didn't respond that there was no CBA or that it had never seen [the agreement]. Rather, it sent a new notice that complied . . . with the termination procedures." *Id.* at 310. Here, NY Chutes complied with the audit and did not take the

11

position that it had no obligation to comply under the CBAs; rather, it actually sent a letter to Local 28 on December 21, 2021 seeking to withdraw from the union as of December 31, 2021. Meslin Decl. ¶ 7; Meslin Ex. 1.  It later sent an email in March 2022 seeking to confirm that it had withdrawn from the union as of December 31, 2021. July 2023 Geisler Decl. ¶ 19. These communications are telling; Defendant acknowledged its obligations under the CBAs and only attempted to terminate those obligations upon its December 21, 2021 letter.

Accordingly, as alleged in the complaint, Defendant was "bound by an agreement to make such contributions" to the Funds. When an employer adopts an agreement by conduct, there is no requirement it have actually signed the written agreement to which it is bound. It is enough that a written agreement exists (here, the 2017 and 2020 CBAs); it need not be "a written agreement to which an employer is bound which also carries that employer's signature." *Four-C-Aire*, 42 F.4th at 311 (addressing LMRA Section 302(c)'s requirement that contributions only be made to a trust fund if there is a specific written agreement setting forth the detailed basis for the payments).

## III. BECAUSE THE DEFENDANT IS BOUND BY CONDUCT, THE FUNDS ARE ENTITLED TO FINAL JUDGMENT BY DEFAULT AGAINST DEFENDANT FOR AMOUNTS OWED UNDER ERISA AND THE LMRA.

Because Defendant was bound to the 2017 and 2020 CBAs, it is liable for delinquent contributions resulting from its subcontracting of covered work and its failure to report covered hours as discovered by the audit under Section 515 of ERISA and Section 301 of the LMRA.[7]

Section 515 of ERISA, 29 U.S.C. § 1145, provides:

---

[7] Benefit trusts have standing to sue under 29 U.S.C. Section 185(a) as a third-party beneficiary to the collective bargaining agreement. *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-22 (4th Cir. 1997), as a separate but overlapping, basis for relief. *See, e.g., Burgher v. Feightner*, 722 F.2d 1356, 1359 (7th Cir. 1983) (the enforcement provisions of ERISA were "intended to supplement rather than supersede the right existing under 29 U.S.C. § 185(a)").

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The damages imposed on an employer who fails to make the required contributions due under a collective bargaining agreement are set forth in ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

As stated above, Defendant NY Chutes was bound to the CBAs with Local 28, and therefore was obligated under the Agreements and the Funds' governing documents to remit contributions to the Plaintiff Funds in accordance with the Agreements. As Plaintiffs have established, via declaration, an audit of NY Chutes' payroll records for the period of July 2016 through December 2020, Defendant failed to report covered hours for work at a specific job site in 2019. Geisler Decl., ¶ 22. As a result, Defendant owes contributions, interest, liquidated damages, and audit fees for this covered work performed in 2019.

Additionally, a plan may seek damages for an employer's violation of a subcontracting provision. *See Walsh v. Schlecht*, 429 U.S. 401, 407 (1977). In such circumstances, the funds

calculate the required payments due from the delinquent employer measured by the hours worked by the subcontractor's employees, regardless of whether the subcontractor's employees benefit from such payments – meaning the plan is not required to provide benefits to subcontracted, non-employees of the employer for such hours. *See id.* at 407; *see also Sheet Metal Workers' Health & Welfare Fund of N.C. v. Stromberg Metal Works, Inc.,* No. 5:21-CV-101-BO, 2021 BL 362052, at *10 (E.D.N.C. Sept. 22, 2021) (finding contributions were owed to the fund for temporary employees regardless of whether the temporary employees would ever receive benefits from the fund). This is because the plan still suffers an injury as a result of the improper subcontracting and is entitled to recovery.

As stated by the Tenth Circuit in *Trustees of the Teamsters Construction Workers Local No. 13 v. Hawg N Action, Inc.*, 651 F.2d 1384 (10th Cir. 1981), "the trustees are entitled to damages in a sum equal to that which they would have received if the agreement between the defendant and the union had been fully performed by all parties." *Hawg N Action,* at 1386-87. Although the Fourth Circuit has not considered such a subcontracting case, other circuits that have considered the issue have come to the same conclusion. *See, e.g., Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 F. App'x 246, 256 (6th Cir. 2015); *Flynn v. Dick Corp.*, 481 F.3d 824, 833 (D.C. Cir. 2007); *Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Karr Bros.,* 755 F.2d 1285, 1290 (7th Cir. 1985)*; Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir. 1982).

Here, Article III, Section 2(A) of the Agreement expressly prohibits Defendant from subcontracting any covered work to employers outside the collective bargaining unit. Because Defendant subcontracted covered work in 2020, the Funds are entitled to judgment for Defendant's violation of the subcontracting provision, based on the covered hours determined by the audit.

14

In total, Defendant is liable to the Funds for at least $26,870.72 in contributions, interest, liquidated damages, and audit fees resulting from Defendant's violation of the subcontracting provision of the CBAs and Defendant's failure to report and remit contributions for covered work performed by its employees for the period of July 2016 through December 2020. Suppl. Geisler Decl., ¶ 21. Defendant also owes attorneys' fees and costs in the amount of $11,418.58. *See* Declaration of Diana M. Bardes ("Bardes Decl."), attached hereto. Plaintiffs are entitled to default judgment in these amounts, plus continuing interest.

## CONCLUSION

For the reasons set forth above, the Court should enter default judgment against Defendant and in favor of Plaintiffs. Plaintiffs request that the Court enter judgment in the amount of $26,870.72 against Defendant for contributions, liquidated damages, audit fees, and interest. Plaintiffs further request an order requiring Defendant to pay Plaintiffs' attorneys' fees and costs in the amount of $11,418.58.

Respectfully submitted,

     /s/ Diana M. Bardes
Diana M. Bardes (VA Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
dbardes@mooneygreen.com
(202) 783-0010
(202) 783-6088 (fax)
*Counsel for Plaintiffs*

November 16, 2023

Case 1:22-cv-01294-PTG-WEF   Document 65   Filed 11/16/23   Page 16 of 16 PageID# 896

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16[h] day of November, 2023, I served the foregoing Brief in Support of Motion for Default Judgment and supporting documents upon Defendant by sending copies of the same via first class mail, postage prepaid, to the following addresses:

New York Chutes
P.O. Box 234
Lebanon, NJ 08833
nychutes@gmail.com

                                                                                 /s/ Diana M. Bardes
                                                                                 Diana M. Bardes