IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK CHUTES, LLC,<br><br>Defendant. | Case No. 1:22-cv-1294-PTG-WEF |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Pension Fund"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Workers' Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC"), (NPF, ITI, SASMI, SMOHIT, and NEMIC collectively referred to as "the Funds"), submit this opposition to Defendant New York Chutes, LLC's ("NY Chutes") motion to set aside the entry of default in this matter.

### Factual Background

The Funds brought this action against Defendant under Sections 502(a)(3), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (g)(2), 1145 and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), for unpaid contributions discovered by an audit of the Defendant's payroll

1

records. The Funds also seek resulting liquidated damages, interest, audit fees and attorneys' fees and costs.

A. The Agreements

The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA") entered into a collective bargaining agreement with the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a the Sheet Metal Workers' International Association, Local Union No. 28 ("Union" or "Local 28") effective for the period of August 1, 2014 through July 31, 2017 ("2014 CBA"). *See* March 30, 2023 Declaration of Robert Geisler ("March 2023 Geisler Decl.")[1], at ¶ 4; *see* Ex. 1 to March 2023 Geisler Decl. NY Chutes executed a Memorandum of Understanding binding them to the CBA between SMACNA and Local 28 on October 6, 2015, which was effective through at least July 31, 2017. March 2023 Geisler Decl. ¶ 4; *see* Ex. 2.

SMACNA and Local 28 entered into a Memorandum of Agreement modifying and extending the terms of the 2014 CBA through July 31, 2020 ("2017 CBA"). March 2023 Geisler Decl. ¶ 5; Ex. 3. SMACNA and Local 28 then agreed to extend the 2017 CBA through October 31, 2020. SMACNA and Local 28 then negotiated a successor agreement effective for the period of November 1, 2020 through October 31, 2021 ("2020 CBA"). *See* Declaration of Robert Geisler dated July 19, 2023 ("July 2023 Geisler Decl.") attached hereto at, ¶ 5; *see* Ex. A[2].

In the absence of a signed writing specifically binding an employer to a collective bargaining agreement, an employer can adopt a collective bargaining agreement or other writing

---

[1] The Declaration of Robert Geisler dated March 30, 2023 and Exhibits 1 through 8 referenced herein are attached to the Plaintiffs' First Motion for Default Judgment. *See* Dkt. No. 32-1.
[2] The July 2023 Declaration of Robert Geisler and Exhibits A through D referenced herein are attached to Plaintiffs' Third Motion for Default Judgment. *See* Dkt. No. 65-1.

2

by conduct manifesting an intention to be bound by its terms. *Bd. of Trs. v. Four-C-Aire, Inc.*, 42 F.4th 300, 310 (4th Cir. 2022); *Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services., Inc*., 791 F.3d 436 (4th Cir. 2015). Here, Defendant adopted the 2017 and 2020 CBAs by conduct manifesting an intention to be bound by their terms.

Pursuant to Article XII, Sections 21-23 of the CBAs, employers which are bound to the CBAs are obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours paid on behalf of its covered employees within the jurisdiction of Local 28. Ex. 1, Art. XII, Secs. 21-23. Further, Article III, Section 2 of the CBAs prohibits bound employers from subcontracting covered work to employees outside of the bargaining unit. Geisler Decl. ¶ 6; Ex. 1, Art. III, Sec. 2. Pursuant to the Agreements, Defendant is obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents").

B. The Audit

The Funds' auditor Calibre CPA performed an audit of NY Chutes payroll records and the Funds notified NY Chutes of the results of the audit in April 2022. Geisler Decl., ¶ 19; Ex. 7. In response to additional information provided by NY Chutes, in February 2023, the Funds revised the audit. Geisler Decl., ¶ 20; Ex. 8.

The revised audit seeks amounts due resulting from two separate contract violations. First, the revised audit determined that NY Chutes failed to remit reports and contributions for covered work performed at the Graduate Hotel for Wilkinson Hi-Rise as Defendant notes in its Memorandum in Support of its Motion to Set Aside Default (*see* Dkt. No. 68, at ¶¶ 1-2). Geisler Decl., ¶ 22; Ex. 8. Second, the audit showed that NY Chutes used subcontractors to perform

covered work in violation of Article III, Section 2 of the CBAs, which Defendant does not address in its Motion to Set Aside Default. Geisler Decl., ¶ 21; Ex. 8. Specifically, based on invoices provided by NY Chutes in response to the audit, the Funds' auditors determined that subcontractors performed covered work. *Id.* These invoices were then used to determine contributions due for the subcontracting violation and interest and liquidated damages were assessed in accordance with the Funds' governing documents. *Id.*

As a result of the audit for the period of July 2016 through December 2020, NY Chutes owes $12,577.76 in contributions, $5,668.73 in interest (calculated through November 13, 2023), and $5,668.73[3] in liquidated damages. *See* Declaration of Robert Geisler dated November 15, 2023 ("November 2023 Geisler Decl.") attached to Plaintiffs' Third Motion for Default Judgment at Dkt. No. 65-3 at, ¶ 3; Ex. 8. Because amounts were found due and owing, Defendant is also responsible for the payment of $2,955.50 in audit testing fees pursuant to Section 1 of the Collections Policy. November 2023 Geisler Decl., ¶ 3; Ex. 6, Sec. 1(c). In total, Defendant owes $26,870.72 to the Funds pursuant to the audit. November 2023 Geisler Decl., ¶ 3.

C. Procedural History

On November 15, 2022, Plaintiffs filed a Complaint against Defendant to collect delinquent contributions found due by audit, liquidated damages, interest, audit fees, and attorneys' fees and costs. The summons, Complaint, and related materials were served on Defendant NY Chutes on November 21, 2022 in accordance with Rules 4(c) and (h) of the Federal Rules of Civil Procedure. *See* Dkt. No. 4.

---

[3] The Second Amended Complaint states liquidated damages would be calculated as the greater of 20% of the delinquent contributions or the interest due. Sec. Am. Compl. ¶ 25(c). As interest is greater than 20% of the delinquent contributions in this case, the liquidated damages now total $5,668.73.

On December 11, 2022, Defendant filed an Answer, which was docketed by the Court on December 16, 2022. *See* Defendant's Answer, Dkt. No. 5. Defendant's Answer stated that Defendant was not represented by a licensed attorney. *Id*. On December 21, 2022, Plaintiffs filed a Motion to Strike Defendant's Answer because a limited liability corporation cannot appear in federal court *pro se*. *See* Dkt. No. 7. On January 13, 2023, the Court granted Plaintiffs' motion and directed Defendant to enter an appearance through licensed counsel and re-file a response to Plaintiffs' complaint within 21 days. Defendant did not file a response through counsel within 21 days.

Plaintiffs filed a Request and Affidavit for Clerk's Entry of Default on February 6, 2023. *See* Dkt. No. 14. The Clerk of Court entered default against Defendant on February 9, 2023. *See* Dkt. No. 30.

During the month of February 2023, Plaintiffs and Defendant were in settlement discussions. Defendant provided additional information to Plaintiffs during this time which led to the Funds revising the audit and corresponding amounts due. Plaintiffs filed a Motion for Leave to File Amended Complaint on March 6, 2023, *see* Dkt. No. 21, which was granted on March 7, 2023. *See* Dkt. No. 25. Plaintiffs' First Amended Complaint was docketed the same day. *See* Dkt. No. 26. The Motion for Leave to File and the Amended Complaint were served on Defendant via UPS ground.

On March 8, 2023, the Court held a telephonic pre-trial conference. Defendant failed to appear at the hearing. Following the hearing, the Court ordered that the parties appear for a status conference on April 21, 2023 and again ordered that Defendant appear through counsel. A copy of this order was mailed to the Defendant the same day. *See.* Dkt. No. 27.

Plaintiffs filed a Request and Affidavit for Clerk's Entry of Default on the Amended Complaint on March 23, 2023. *See* Dkt. No. 29. The Clerk of Court entered default against Defendant on March 30, 2023. *See* Dkt. No. 30. On March 31, 2023, the Funds filed a Motion for Default Judgment which was served on Defendant via UPS ground. Magistrate Judge Fitzpatrick heard the Motion for Default Judgment on April 21, 2023. *See* Dkt. No. 36. Defendant failed to appear at the hearing. On May 1, 2023, Plaintiffs filed supplemental briefing to the Motion for Default Judgment which was served on Defendant. *See* Dkt. No. 37.

On July 5, 2023, Judge Fitzpatrick issued his report and recommendations. He found that this court had subject matter jurisdiction and personal jurisdiction, the venue was proper, and the Defendant was properly served. R&R, p. 3-5. He also found that default judgment may be entered against Defendant despite its attempt to appear *pro se* in this matter. R&R, p. 6. Judge Fitzpatrick found, however, that the Funds were not entitled to judgment by default because the Funds "failed to plead that Defendant was bound to the reporting or contribution terms and conditions at any time beyond July 31, 2017." R&R, p. 11. He came to this conclusion because Defendant signed an MOU which he found expired on July 31, 2017 and the Funds did "not provide any additional agreement between Defendant and Local 28 that would have extended Defendant's obligation to pay the Fund" beyond the expiration of the 2017 MOU. *Id.* Because the Funds seek amounts due for periods following July 31, 2017, default judgment was not appropriate on the record.

Plaintiffs subsequently filed a Renewed Motion for Default Judgment setting forth an alternative basis for liability – that Defendant bound itself to the later collective bargaining agreements by conduct. Dkt. No. 49, 50. The Renewed Motion for Default Judgment and supporting documents were served on Defendant. At hearing on the motion on September 22, 2023, Judge Fitzpatrick expressed concerned that the adoption by conduct theory was not

adequately pled in the complaint so as to allow for default judgment. Dkt. No. 52. Judge Fitzpatrick entered an order permitting Plaintiffs to file supplemental briefing, which was mailed and e-mailed to Defendant on the same day. *See* Dkt No. 53. On September 29, 2023, Plaintiffs withdrew the pending motions for default judgment. Dkt. No. 54. The same day, Plaintiffs filed a motion for leave to file a Second Amended Complaint which adequately pled the adoption by conduct theory. Dkt. No. 55. The motion was granted and Plaintiffs' Second Amended Complaint docketed on October 3, 2023. Dkt. Nos. 58 & 59.

On October 11, 2023, the Second Amended Complaint and related materials were served on Defendant in accordance with Rule 4(c) and (h) of the Federal Rules of Civil Procedure. *See* Dkt. No. 61. Rule 15(a)(3) of the Federal Rules of Civil Procedure provides Defendant fourteen (14) days in which to file an answer or otherwise respond to the Second Amended Complaint. Defendant failed to file an answer or other responsive pleading.

Plaintiffs filed a Request and Affidavit for Clerk's Entry of Default on November 1, 2023 which was served on the Defendant. Dkt. No. 62. The Clerk of Court entered default against Defendant on November 7, 2023. Dkt. No. 63. Plaintiffs filed a Motion for Default Judgment on the Second Amended Complaint on November 16, 2023 which was served on Defendant via UPS ground. *See* Dkt. No. 64.

Counsel for Defendant entered an appearance and filed the Motion to Set Aside Default on December 7, 2023, one day prior to the scheduled hearing on the Motion for Default Judgment. *See* Dkt. Nos. 67, 68.

## **ARGUMENT**

A court is permitted to set aside an entry of default only for good cause pursuant to Federal Rule of Civil Procedure 55(c). In considering whether good cause exists to set aside an entry of

default, a court should consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). Here, Defendant has not established good cause to set aside the default.

1. <u>Defendant did not act with reasonable promptness.</u>

Defendant was first notified that it must be file an appearance through licensed counsel on January 13, 2023. After Plaintiffs filed an Amended Complaint, the court again notified Defendant that it must respond through licensed counsel by March 22, 2023. Defendants failed to file a response. Defendant was served with numerous pleadings between March 2023 and the filing of Plaintiffs' Second Amended Complaint on October 3, 2023 which was personally served on Defendant on October 11, 2023. Defendant failed to answer the Second Amended Complaint by the October 25, 2023 deadline. Defendant did not file an appearance through counsel until December 7, 2023, nearly 11 months after the first notice that Defendant must be represented by counsel and more than six weeks after Defendant had defaulted for a third time. Accordingly, Defendant failed to act with reasonable promptness.

Defendant does not address this factor in its Motion and accordingly, it should be deemed conceded.

2. <u>Defendant bears personal responsibility for the default.</u>

The Court also considers whether a defendant is ultimately responsible for its failure to answer the complaint in a timely manner; here, it is. As discussed above, Defendant has had numerous opportunities to defend against this litigation since it was first filed in November 2022, and only on the eve of the hearing on the third motion for default judgment did it properly appear

before this Court with counsel. Thus, the Court should find that this factor also weighs in favor of denying Defendant's motion.

3. <u>Defendant does not have a meritorious defense.</u>

As described in the Funds' Third Motion for Default Judgment, "the revised audit seeks amounts due resulting from two contract violations." Memo. in Support of Third Mot. for Default Jmt, Dkt. No. 65 at 6. The audit showed both that NY Chutes used subcontractors to perform covered work in violation of Article III, Section 2 of the CBAs and that NY Chutes failed to remit reports and contributions for covered work at a specific job site – the Wilkinson Hi-Rise project. Geisler Decl., ¶ 21-22; Ex. 8,

Defendant raises no defense as to the amounts found by the Funds' auditor related to the subcontracting performed by Defendant in violation of the collective bargaining agreement. As such, no meritorious defense has been raised as to the amounts due related to the subcontracting violation.

Defendant only raises a defense as to the amounts due found by the Funds' auditors related to the Wilkinson Hi-Rise project – claiming that it only worked 79.5 hours on the project despite payment of $35,000 to complete the project. To evaluate the likelihood of success of this defense, the Court should first note the context of the Funds' claim under Section 515 of ERISA. "Section 515 – as a statement of federal labor policy – bestows favored status on multiemployer plans, allowing them to collect contributions from employers by enforcing the contribution requirements in accordance with the terms and conditions of the plan or CBA." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 139 (4th Cir. 2019). Consistent with that favored status, courts have imposed a high standard on employers who dispute audit findings. Other Circuits have found that where there is a challenge to audit findings, "the burden shifts to

9

the employer to come forward with evidence of the precise amount of work performed." *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988). *See also Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 697 (6th Cir. 1994); *Combs v. King,* 764 F.2d 818, 822-27 (11th Cir. 1985). Defendant has not done so here except for the conclusory assertions by Mr. Fox in his declaration that only 79.5 hours of work was performed. Such assertions are not enough to overcome the presumption in favor of the Funds' audit findings, and accordingly, Defendant does not have a meritorious defense.

   4. Prejudice

The Funds would be prejudiced if the default is set aside because the Local Union is also engaged in a lawsuit against Defendant in New York seeking to enforce an arbitration award for amounts due from Defendant. *International Association of Sheet Metal, Air, Rail and Transportation Workers' Local Union No. 28 v. NY Chutes, LLC,* NY Case No. 612467/2022. If the Local Union reaches judgment earlier than the Plaintiffs here, then the Funds' collection risk associated with enforcing the judgment will increase.

   5. Defendant has a history of dilatory action in this matter.

This Court looks to whether there are other instances of dilatory action on the part of the defaulting party including whether a defendant has missed other deadlines in a matter. *Pinpoint IT Servs., LLC v. Atlas IT Export Corp.,* 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) (finding this factor weighed in favor of non-defaulting party where defaulting party failed to timely respond to the complaint and also failed to timely file an opposition to the motion to certify entry of default). Here, Defendant has missed all of the deadlines in this matter. It failed to file a proper answer through counsel to the original complaint and it also failed to answer the amended complaint and second amended complaint. Default has been entered in this matter three times, without response

by Defendant. It has failed to respond to the first two motions for default judgment and only responded to the third by noticing an appearance by counsel the day before the hearing on the motion. Finally, Defendant was ordered in January 2023 to obtain counsel and it failed to do so until December 2023. Accordingly, this factor counsels in favor of denying Defendant's motion.

6. Alternative Sanctions

Finally, less drastic alternative sanctions should not be considered here. Because the Funds are entitled to their attorneys' fees and costs under 29 U.S.C. Section 1132(g)(2) should they prevail in this action, an award of fees at this point in the litigation does not serve as a sanction and should not be considered as an alternative to denying Defendant's motion.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's motion to set aside the entry of default.

Respectfully submitted,

    /s/ Diana M. Bardes
Diana M. Bardes (VA Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
dbardes@mooneygreen.com
(202) 783-0010
(202) 783-6088 (fax)
*Counsel for Plaintiffs*

December 18, 2023

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of December, 2023, I filed the foregoing Opposition to Defendant's Motion to Set Aside the Entry of Default and supporting documents via the Court's CM/ECF system, which caused electronic notification upon the following:

Micah E. Ticatch
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182

*Counsel for Defendant*

                                                  /s/ Diana M. Bardes
                                                  Diana M. Bardes