IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| BOARD OF TRUSTEES SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>NEW YORK CHUTES, LLC, <br><br>　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )    Case No. 1:22-cv-1294-PTG-WEF |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Despite having taken multiple opportunities to plead their claim, Plaintiffs have failed to present allegations that plausibly establish that Defendant New York Chutes, LLC ("NY Chutes") agreed to the relevant collective bargaining agreements. Furthermore, even if Plaintiffs could establish the agreements bind NY Chutes, they have failed to plausibly allege any breach by NY Chutes of the obligations under those agreements. Consequently, the Second Amended Complaint (Dkt. 59) ("SAC") should be dismissed with prejudice.

## BACKGROUND[1]

1. NY Chutes is a small business that specializes in the installation, maintenance and repair of trash handling equipment.

---

[1] In addition to the Second Amended Complaint, this brief relies on several documents that were previously submitted into the record by Plaintiffs, but technically remain outside the operative pleading. Each of these documents is properly considered on a Rule 12(b)(6) motion because the documents are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

2. On October 6, 2015, NY Chutes entered into a written Memorandum of Understanding ("MOU") with Sheetmetal, Air, Rail, and Transportation Workers' Local Union 28 (the "Union") in which the parties agreed to be bound by the terms and conditions of a 2014 collective bargaining agreement entered into between the multi-employer associations, Sheet Metal & Air Conditioning Contractors Association of New York City Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA") and the Union ("2014 CBA"). (SAC ¶ 14; Dkt. 32-1, at 71 of 174.)

3. Among other things, the 2014 CBA required NY Chutes to make certain contributions to the funds represented by Plaintiffs. (*See* SAC ¶ 19.)

4. By its own terms, the 2014 CBA expired on July 31, 2017. (SAC ¶ 14; Dkt 32-1 at 8 of 174.)

5. Likewise, the MOU represented an agreement only for the time period "from the date of execution of this MEMORANDUM to July 31, 2017." (Dkt. 32-1, at 71 of 174.)

6. Plaintiffs allege that following the expiration of 2014 CBA, SMANCA and the Union entered into a "2017 CBA" effective from August 1, 2017 to October 31, 2020 and a "2020 CBA" effective from November 1, 2020 through October 31, 2020. (SAC ¶ 15.)

7. Plaintiffs have not alleged that NY Chutes entered into any express agreement with the Union after the expiration of the MOU and the 2014 CBA.

8. Plaintiffs have not alleged that NY Chutes signed any document purporting to adopt the 2017 CBA or 2020 CBA.

9. From August 2017 through February 2019 NY Chutes used <u>no union labor</u> and reported that fact to the Union. (*See* SAC ¶ 17(A).)

2

10. From March 2019 through July 2019, NY Chutes engaged in a single job (the "Wilkinson Hi-Rise Job") that used 79.25 hours of Union labor. NY Chutes reported this time and paid contributions for this time to Plaintiffs. (*See* SAC ¶ 17(A)-(B).)

11. Based only on the gross revenue NY Chutes received in Wilkinson Hi-Rise Job, Plaintiffs allege that NY Chutes must have paid an additional 557 of non-union labor hours on that job, for which NY Chutes did not report the time or pay any contributions. (*See* Audit, Dkt. 65-2 at 13, 17 of 18.)

12. Following the completion of the Wilkinson Hi-Rise Job, NY Chutes has not employed any Union labor, and reported that fact to the Union. (*See* SAC ¶ 17(A).)

13. Plaintiffs allege that in 2020, NY Chutes employed non-union subcontractors for 81 hours to perform work supposedly covered by the 2017 and 2020 CBAs, and did not report those hours to the union or contribute to the funds on their behalf. (*See* Audit, Dkt. 65-2 at 12, 18 of 18.)

14. In an effort to clarify the ambiguous relationship between itself and the Union, on December 29, 2021, NY Chutes sent the Union a letter indicating that it did not intend to continue working with the Union or reporting its lack of Union labor, and requested the return of the $15,000 bond the company had provided the Union under the 2014 CBA. (SAC ¶ 17(F); Letter, Dkt. 65-2 at 5 of 18.)

15. Following that letter, the Union and Plaintiffs requested an audit of NY Chutes records and NY Chutes provided the information requested by the auditor. (SAC ¶ 17(D).)

16. Despite the fact that Plaintiffs' own allegations are that during the relevant 4.5 years following expiration of the MOU, NY Chutes engaged in almost no work covered by the CBAs, and when it did engage in that work, the company employed almost entirely non-union workers to

do that work, Plaintiffs allege that NY Chutes somehow manifested an intent to be bound by the 2017 and 2020 CBAs. (SAC ¶ 17.)

17. As explained below, because that legal conclusion is without basis, Plaintiffs' claims should be dismissed with prejudice.

## STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court determines whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. "The plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.' It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Mills v. Inova Health Care Services*, 2023 WL 9107317, at *2 (E.D. Va. 2023) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)) (cleaned up).

## ARGUMENT

**A.     Plaintiffs' Claim Must Be Dismissed Because NY Chutes Did Not Agree To Be Bound By The Terms In The Relevant Collective Bargaining Agreements.**

The labor which forms the basis of Plaintiffs' claims all took place in 2019 and 2020 — long after the July 31, 2017 expiration date of the MOU and 2014 CBA. Thus, Plaintiffs can only state a claim against NY Chutes if they have alleged sufficient facts to demonstrate NY

4

Chutes was bound to the 2017 and 2020 CBAs. Because, as explained below, Plaintiffs have not done so, the claims should be dismissed.

    1.    <u>There is no written agreement by NY Chutes to be bound by the terms in the 2017 CBA or 2020 CBA.</u>

As outlined above, Plaintiffs allege that NY Chutes entered into the written MOU, under which they agreed to be bound by the terms of a 2014 CBA. (SAC ¶ 14.) This is undisputed, as is the fact that both the 2014 CBA and the MOU expired on July 31, 2017. (SAC ¶ 14; Dkt. 32-1 at 8, 71 of 174.)

Although Plaintiffs allege that the multi-employer group SMACNA and the Union entered into "successor agreements" in 2017 and 2020, Plaintiffs do not allege that NY Chutes ever executed any kind of written agreement to be bound by either the 2017 CBA or 2020 CBA — because NY Chutes did not. As the Honorable William E. Fitzpatrick, U.S. Magistrate Judge, previously noted with regard to a prior version of the Complaint:

> Plaintiffs do not provide any additional agreement between Defendant and Local 28 that would have extended Defendant's obligation to pay the Fund beyond July 31, 2017. Plaintiffs never allege there was an additional agreement between Defendant and Local 28. Nor do Plaintiffs allege facts that would suggest Defendant is somehow bound to third-party SMACNA's agreement to enter a successor CBA.

*Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. New York Chutes, LLC*, 2023 WL 6066463, at *6 (E.D. Va. 2023). Other than the flawed "intention to be bound" argument addressed below, Judge Fitzpatrick's conclusion above remains applicable to the current operative pleading.

Quite simply, NY Chutes never expressly agreed to be bound by the 2017 or 2020 CBAs, and Plaintiffs have not alleged otherwise.

2.   NY Chutes did not manifest an intention to be bound to the 2017 or 2020 CBAs.

Given that there was no express agreement to be bound by the 2017 and 2020 CBAs, Plaintiffs argue in the Second Amended Complaint that NY Chutes manifested "an intention to be bound" by those agreements. (*See* SAC ¶¶ 16-17.)

As noted in Plaintiff's operative pleading, on two occasions the Fourth Circuit has permitted funds to enforce collective bargaining obligations when there was no concrete written expression of intent to be bound because the employers' conduct was found to have objectively manifested an intention to be bound by the collective bargaining agreement. *See Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436 (4th Cir. 2015); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300 (4th Cir. 2022). However, as explained below, neither one of those cases is analogous to the instant one.

In *Plumbing Services,* the employer signed a Letter of Assent, which it "agreed to contribute to the Fund as required by the then-existing collective bargaining agreement and any successors." 791 F.3d at 447. The court held that the signed Assent combined with *13 years* of consistent contributions to the funds showed an intention to be bound by the collective bargaining agreement. *Id.* at 448.

In *Four-C-Aire*, the employer signed a "Wage Sheet," which contained a list of all the "wage and contribution obligations under the CBA." 42 F.4th at 310. After signing that document, the *owners* of the business and *every one* of its employees joined the union. *Id.* at 305. The employer then paid union wages and contributed to the required funds as required by the CBA for every one of its employees for a two-year period; complied with at least one payroll audit by the union; and at enrolled at least one employee in the union apprentice program. *See id.* In addition to all that, the employer was also a member of the multi-employer association that had negotiated

the CBA. *Id.* at 309. Given all these facts, it is not surprising that the Fourth Circuit concluded that Four-C-Aire had objectively manifested an intent to be bound by the CBA in that case.

In contrast to those cases, in the instant matter, NY Chutes did not sign any document that is equivalent to the Letter of Assent or Wage Sheet with regard to the 2017 or 2020 CBAs. The only signed document alleged in the Second Amended Complaint is the MOU, which expired on its own terms on July 31, 2017. (Dkt. 32-1, at 71 of 174.)

Additionally, unlike the two Fourth Circuit cases, where the employers consistently paid union wages and contributions for years on end, NY Chutes did not pay <u>any</u> union wages or make <u>any contributions</u> for the first 19 months after the expiration of the MOU. (*See* SAC ¶ 17(A).) Following that 19-month period, NY Chutes performed <u>one job</u> where it employed union workers for a total of 79.25 hours of work. (*See* Dkt. 65-2 at 9-18 of 18.) NY Chutes paid those workers their union rates, including the required contributions to benefits and pension funds. (*See id.*) According to Plaintiffs, at this very same job, NY Chutes employed non-union workers for *557 hours* of work and did not pay union rates or contributions to these workers.[2] (*See id.* at 13,17.) After reporting the 79.25 hours in 2019, NY Chutes has not employed any other union worker, reported any additional hours to the union or contributed any additional amount to the funds. (*See* SAC ¶ 17(A).) According to the Plaintiffs, in 2020, NY Chutes employed non-union subcontractors for 81 hours to perform covered work and did not report those hours to the union or contribute to the funds. (*See* Dkt. 65-2 at 12, 18.) Plaintiffs do not allege any other work performed by NY Chutes that would be covered by the CBAs prior to NY Chutes' notice on December 31, 2021.

---

[2] As explained below, this allegation has no connection to reality and is not plausibly asserted. Nonetheless, solely for purposes of evaluating the "intention to be bound" argument, the Court should accept Plaintiffs' allegations at face value.

In sum, according to Plaintiffs' allegations, in the four-and-a-half years following expiration of the 2014 CBA and MOU, NY Chutes only performed 717 hours of covered work, of which, approximately 90% was performed by non-union workers and for whom contributions were not paid into the funds. If Plaintiffs allegations are accepted as true, they demonstrate a clear and unmistakable intention *not to be bound* by the CBAs.

Not surprisingly, the cases that have dealt with employers without a signed agreement who use both union and non-union workers to perform covered work have held that the mere payment of union benefits to the union workers (when not providing the same to the non-union workers) demonstrates an intention <u>not to be bound</u> by the CBA. *See, e.g., Firesheets v. A.G. Bldg. Specialists, Inc.*, 134 F.3d 729, 731 (5th Cir. 1998); *New Jersey Reg'l Council of Carpenters v. Jayeff Const. Corp.*, 495 F. App'x 230, 234 (3d Cir. 2012); *Laborers' Dist. Council of Virginia Health & Welfare Tr. Fund v. Cleveland Cement Contractors, Inc.*, 2014 WL 1017659, at *8 (W.D. Va. 2014); *Millwrights & Mach. Erectors Loc. Union 729 v. Gulf Eng'g Co., LLC*, 2011 WL 162071, at *5 (E.D. La. 2011); *Panek v. Cimato Bros. Const.*, 2007 WL 3033948, at *3 (W.D.N.Y. 2007). Those holdings make sense, as the requirement that employers either exclusively use union labor or at least pay the full cost of union wages and benefits to all employees (regardless of membership) is typically the *sine qua non* of a collective bargaining agreement. By violating that principle, an employer objectively demonstrates that it does not intend to honor the essential terms of the CBA.

Based on the Plaintiffs allegations in the Second Amended Complaint, it is clear that NY Chutes manifested an intention not to be bound by the 2017 or 2020 CBAs. As such, the claims should be dismissed with prejudice.

        3.      <u>NY Chutes' December 29, 2021 Letter and participation in the subsequent audit does not demonstrate an intention to be bound by the 2017 and 2020 CBAs.</u>

In the Second Amended Complaint, Plaintiffs argue that the NY Chutes' letter on December 29, 2021, which sought to sever any further relationship with the union and the return of a bond paid by NY Chutes under the 2014 CBA, and NY Chutes' subsequent participation in payroll audit, somehow established that the company adopted the 2017 and 2020 CBAs.  (*See* SAC ¶¶ 17(D) - (F).)  These allegations do not change the analysis.

First, because these actions came in late 2021 and 2022, they are simply incapable of establishing an objective intent to be bound back in 2019 and/or 2020.  To state the obvious, in order to state a claim for breach of an obligation, a person must agree to the contractual obligation *before* the breaching conduct occurs.  If Plaintiffs are proceeding on a theory that NY Chutes' outward conduct objectively manifested an intention to be bound, Plaintiffs must show such conduct *before* the claimed breach in order to state a claim.  A letter sent in 2021 or a participation in an audit in 2022 does not demonstrate that NY Chutes had adopted the CBA in 2019.

As best as can be discerned, in these allegations Plaintiffs seems to be attempting to establish that NY Chutes' owners subjectively believed they were bound by a CBA in 2021— but that is not relevant to the legal inquiry.  Because "adoption-by-conduct" is subject to an objective inquiry (*see Four-C-Aire,* 42 F.4th at 312), the subjective beliefs of NY Chutes' principals are irrelevant.  As established above, the objective conduct of NY Chutes in 2017-2020 demonstrated an intention not to be bound to the CBAs.

Secondly, even if these post-date actions were relevant, they demonstrate little other than a desire by NY Chutes to avoid litigation.  For example, NY Chutes' "compliance" with the union audit was no different than ordinary pre-litigation sharing of relevant information with a potential plaintiff in order to dissuade the party from initiating litigation.  Generally, public policy and the

Federal Rules of Evidence seek to avoid penalizing a party for engaging in conduct designed to prevent litigation. *See* FRE 408-410.

Most importantly, even if these allegations were considered by the Court, they simply cannot overcome the extremely evidence outlined above that NY Chutes objectively demonstrated an intention not to be bound by the CBAs.

**B.      Plaintiffs Have Failed To Plead A Plausible Claim.**

Even if the Court found that the 2017 and 2020 CBAs were implicitly adopted by NY Chutes, Plaintiffs still have failed to state a plausible claim for breach of those agreements in the Second Amended Complaint. Plaintiffs have essentially alleged two separate claims: (1) a failure to pay contributions related to the 2019 job; and (2) failure to pay contributions related to the use of subcontractors in 2020. The Second Amended Complaint only provides the following allegation as to these claims:

> a payroll audit of NY Chutes demonstrates that Defendant employed employees within the jurisdiction of Local 28 for whom contributions were owed to the Funds and failed to make all the required contributions, despite its obligation to do so. In addition, the audit shows that Defendant violated the terms of the Agreement by subcontracting covered work to non-union employers.

and:

> Defendant has failed and refused to fulfill its contractual obligations for owed contributions and by subcontracting covered work as demonstrated by a payroll audit conducted on Defendant by the Funds for the period of July 2016 through December 2020, showing amounts due in 2019 and 2020.

and:

> Specifically, the audit revealed that NY Chutes owes contributions in the amount of $12,577.76.

(SAC ¶¶ 26, 30, 33.)

10

In other words, the entire substance of the claims in the Second Amended Complaint is to simply assert that NY Chutes is liable for unpaid contributions because the audit says so.  That is insufficient to establish a plausible claim, unless the audit itself provides factual allegations that make the claim plausible.

With regard to the 2019 job, the audit states the following:

> The invoice for Wilkinson Hi-Rise was reviewed from 2019. The invoice states NY Chutes will provide labor only with an invoice amount of $35,000 for the labor. Auditor divided this invoice amount by the Journeyman wage rate at the time which calculated to 636.71 hours. In 2019 the employer only reported 79.25 hours and therefore Auditor picked up the remaining 557.46 hours under a Maurice Anderson as a placeholder for now.

(Dkt. 65-2 at 13 of 18).

In other words, the audit states that NY Chutes received $35,000 for the work and therefore, the 79.25 labor hours NY Chutes reported and paid somehow understated the actual labor.  The audit contains <u>no other explanation or factual allegations</u> to justify that conclusion.  It is just a bald assertion based on a leap of logic without any factual basis.  As any CPA is surely aware, the income associated with a project (without more information) tells you nothing about the expenses of that project.  Income can be much higher than the expense of a project (resulting in profits) or can be much lower (resulting in losses).  As best as can be discerned, the auditor just assumed, for no apparent reason, that income on this project must equal the labor expense— but such an outcome rarely happens in life and neither the audit nor the Second Amended Complaint provide *any* factual allegations that would suggest that such an assumption is plausible in this circumstance.  This is precisely the type of "possible but not plausible" allegation that is not sufficient to state a claim under the *Twombly/Iqbal* standard.

Plaintiffs' subcontractor claim fares no better.  The only substantive factual allegation in the audit states the following:

11

> The auditor reviewed the cash disbursement report and noted independent contractors had been used to perform covered work.

(Dkt. 65-2 at 12 of 18). The auditors claim that the cash disbursement report showed that independent contractors had been paid is a factual assertion that must be accepted on a motion to dismiss. However, the claim that the contractors performed "covered work" is a conclusory statement that is not supported by any further factual allegations in the Second Amended Complaint or the audit. The CBA provides that subcontracting is not permitted only as to certain functions. (*See, e.g.,* Dkt. 32-1 at 20-22 of 174). It does not restrict all subcontracting. (*Id.*)

In order to state a plausible claim for violation of the no-subcontracting clause of the CBA, Plaintiffs would need to allege what jobs the contractors *actually performed* in order to justify the conclusion that their work was encompassed by the CBA's prohibition. Because Plaintiffs have not made such an allegation in either the audit or the Second Amended Complaint, the subcontractor claim is not plausible and must be dismissed.

**C.    Plaintiffs' Claims Should Be Dismissed With Prejudice.**

The Court should deny Plaintiffs the opportunity of any further amendment and instead dismiss their claims with prejudice. "In the Eastern District of Virginia, an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim." *Field v GMAC LLC,* 660 F. Supp. 2d 679, 690 (E.D. Va. 2008) (quoting *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,* 432 F. Supp. 2d 571, 595 (E.D.Va.2006) and *Travelers Cas. & Sur. Co. v. Danai,* 2005 WL 2045398, at *3 (E.D. Va. 2005)); *see also Hamilton v. Newby*, 2020 WL 972752 (E.D. Va. 2020) (granting Rule 12(b)(6) motion to dismiss and declining to grant leave to amend where the plaintiff has already had two opportunities to state an actionable claim for relief).

Plaintiffs' operative pleading is their third complaint in this matter. If Plaintiffs had a sufficient basis to state a claim, they would have done so already. Consequently, their claims should be dismissed with prejudice.

Dated: January 9, 2024                                              Respectfully submitted,

                                                 /s/ Micah E. Ticatch
Micah E. Ticatch, VA Bar No. 83351
Edward Lee Isler, Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of January 2024, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Eastern District of Virginia using the CM/ECF system, which automatically sends the foregoing via email to:

>Diana M. Bardes, Esq. (VA Bar No. 81831)
>Mooney, Green, Saindon, Murphy & Welch, P.C.
>1920 L Street, NW, Suite 400
>Washington, D.C. 20036
>(202) 783-0010
>(202) 783-6088 (facsimile)
>dbardes@mooneygreen.com
>*Counsel for Plaintiff Funds*

>      */s/ Micah E. Ticatch*
>Micah E. Ticatch, Va Bar No. 83351
>Isler Dare, P.C.
>1945 Old Gallows Road, Suite 650
>Vienna, Virginia 22182
>Telephone: (703) 748-2690
>Facsimile: (703) 748-2695
>E-Mail: mticatch@islerdare.com
>*Counsel for Defendant*
>*New York Chutes, LLC*