**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **BOARD OF TRUSTEES SHEET METAL WORKERS' NATIONAL PENSION FUND,** *et al.* <br><br> **Plaintiffs,** <br><br> v. <br><br> **NEW YORK CHUTES, LLC,** <br><br> **Defendant.** | **Case No.** 1:22-cv-1294-PTG-WEF |

<u>**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**</u>

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Pension Fund"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Workers' Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC"), (NPF, ITI, SASMI, SMOHIT, and NEMIC collectively referred to as "the Funds"), oppose Defendant New York Chutes, LLC's ("NY Chutes") motion to dismiss.

When an employer is bound to a collective bargaining agreement with an obligation to contribute to the Plaintiff Funds, it must report covered work performed by its employees and contribute based on the covered work performed. Here, the Funds have pled NY Chutes was bound to a collective bargaining agreement with a local sheet metal workers' union by conduct. Because NY Chutes was bound, the Fund alleges NY Chutes must report covered hours worked by its employees to the Fund and remit contributions based on those hours worked, and it may not subcontract covered work to non-union entities except in certain circumstances. Here, the Funds'

1

auditors concluded that NY Chutes underreported hours worked on a specific union job site and NY Chutes improperly subcontracted to a non-union employer. The Funds brought suit to collect the amounts due resulting from these violations, and NY Chutes has moved to dismiss the Funds' Second Amended Complaint arguing that the Funds have not sufficiently pled their claims. The motion should be denied because the Funds' claims are well pled under Rule 8 and the appropriate pleading standards.

## **Factual Background**

The Funds brought this action against Defendant under Sections 502(a)(3), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (g)(2), 1145 and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), for unpaid contributions discovered by an audit of Defendant's records. The Funds also seek resulting liquidated damages, interest, audit fees and attorneys' fees and costs.

A.   The Agreements

The Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc. (collectively, "SMACNA") entered into a collective bargaining agreement with the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a Sheet Metal Workers' International Association, Local Union No. 28 ("Union" or "Local 28") effective for the period of August 1, 2014 through July 31, 2017 ("2014 CBA"). Second Am. Compl., ¶ 14. NY Chutes executed a Memorandum of Understanding binding them to the CBA between SMACNA and Local 28 on October 6, 2015, which was effective through at least July 31, 2017. *Id.*

SMACNA and Local 28 entered into a Memorandum of Agreement modifying and extending the terms of the 2014 CBA through July 31, 2020 ("2017 CBA"). Second Am. Compl.,

¶ 15. SMACNA and Local 28 then agreed to extend the 2017 CBA through October 31, 2020. *Id.* SMACNA and Local 28 then negotiated a successor agreement effective for the period of November 1, 2020 through October 31, 2021 ("2020 CBA"). *Id.*

      B.      <u>NY Chutes Adopted by the Agreement by Conduct.</u>

After the 2014 CBA to which NY Chutes was signatory expired, Defendant adopted the 2017 and 2020 CBAs by conduct manifesting an intention to be bound by their terms. As alleged in the Second Amended Complaint, NY Chutes used the Funds' internet payment system consistently from October 2015 through February 2023 to meet its reporting obligations to the Funds. Second Am. Compl., ¶ 17. NY Chutes used the internet payment system to report covered hours and to pay corresponding contributions for March through July 2019, and it used the internet payment system to report that zero covered hours were worked for August 2017 through February 2019 and August 2019 through December 2020. *Id.* Reporting zero hours in months where a company self-reports that it performed no covered work is required by the CBAs at Article XII, Section 21.E. *Id.* NY Chutes' employees for whom hours were reported accrued service credit for those hours, which will be used to calculate their pension benefit, if any, upon their retirement. *Id.*

As pled in the Second Amended Complaint, NY Chutes also reported covered hours worked during March 2019 through July 2019 to Local 28 and the Local Funds. *Id.* NY Chutes paid the corresponding working assessments on behalf of its covered employees for those reported hours. *Id.*

Moreover, the 2014, 2017 and 2020 CBAs all obligate employers to comply with payroll audits conducted by the NPF to audit their payroll and wage records to determine the accuracy of reporting and contributions made to the Fund. *Id.* Here, NY Chutes complied with a payroll audit covering July 2016 through December 2020 for both the National Funds and the Local Funds. *Id.*

3

Calibre CPA Group performed the audit for the Funds. In its audit report, Calibre reported that "Mrs. Fox provided the necessary documentation to complete the audit." *Id.*

Finally, NY Chutes acknowledged its obligations under the 2017 and 2020 CBAs in various email communications. For example, on March 30, 2022, in response to a question from Calibre about work performed by an employee named Edwin in 2019, NY Chutes described the employee as performing work "on the union job." *Id.* Additionally, on April 22, 2019, NY Chutes acknowledged that it worked "one union job in 2019." *Id.* NY Chutes sent a letter to Local 28 on December 29, 2021 serving as its "official request to withdraw from the SMW Union Local 28 effective December 31, 2021." *Id.* NY Chutes reiterated its understanding in a March 28, 2022 email, which was provided to the Funds, in which it stated that "We should be out of the Union and the "zero" weekly reporting requirements by now. We requested withdrawal effective 12/31/2021." By requesting withdrawal effective December 2021, NY Chutes acknowledged that it was bound by the CBAs through that date. *Id.*

      C.     <u>NY Chutes Breached the Agreements.</u>

Pursuant to CBA Article XII, Sections 21-23, employers which are bound to the CBAs must submit monthly remittance reports and fringe benefit contributions to the Funds for all hours worked on behalf of its covered employees within the jurisdiction of Local 28. Second Am. Compl., ¶ 19. Further, CBA Article III, Section 2 prohibits bound employers from subcontracting covered work to employees outside the bargaining unit. Second Am. Compl., ¶ 20.

The Funds' audit of NY Chutes found two CBA violations. First, the audit determined that NY Chutes failed to make all required contributions on behalf of its covered employees. Second

Am. Compl., ¶¶ 26, 29.[1] Second, the audit determined that NY Chutes violated the CBAs by subcontracting covered work to non-union employers. Second Am. Compl., ¶¶ 26, 30, 31.

The audit concluded that NY Chutes owes $12,577.76 in contributions, $5,668.73 in interest (calculated through November 13, 2023), and $5,668.73 in liquidated damages. Second Am. Compl., ¶ 33. Because amounts were found due, Defendant is also responsible for $2,955.50 in audit testing fees Second Am. Compl., ¶ 33. In total, Defendant owes $26,870.72 to the Funds under the audit.

## STANDARD

A motion to dismiss filed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 658 (E.D. Va. 2015). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw all reasonable factual inferences from [factual] allegations in the plaintiff's favor." *Goulmamine,* 138 F. Supp. 3d at 658 (quoting *Nemet Chevrolet, Ltd. v.*

---

[1] As Defendant notes, these amounts due are related to work performed on the "Wilkison Hi-Rise Project."

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

## ARGUMENT

**I.    The Funds Have Adequately Pled that NY Chutes Was Bound to the CBAs by Conduct.**

Absent any signed writing specifically binding an employer to a collective bargaining agreement, an employer can adopt a collective bargaining agreement or other writing by conduct manifesting an intention to be bound by its terms. In *Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services., Inc*., 791 F.3d 436 (4th Cir. 2015), this Court adopted the majority view[2] that an employer adopts a collective bargaining agreement "by conduct manifesting an intention to be bound by its terms." 791 F.3d at 448. Holding that the particular employer had satisfied that standard, this Court identified only two facts to support its finding: (1) the employer signed a letter of assent that required it to contribute to the pension plan as required by a collective bargaining agreement and (2) the employer made the required contributions to the pension plan. *Id.* at 447-48.

Although those two factors alone are enough, in *Bd. of Trs., Sheet Metal Workers' National Pension Fund v. Four-C-Aire, Inc.*, the Fourth Circuit noted "other actions . . . might signal an employer's intent to bind itself to a collective bargaining agreement. Evidence that an employer paid union wages, remitted union dues, or submitted itself to union jurisdiction (such as in a grievance procedure) all support adoption by conduct." *Bd. of Trs., Sheet Metal Workers' Nat'l*

---

[2] Consistent with this Court, the Fifth, Seventh, Ninth, Tenth and Eleventh Circuits hold that an intent to bound can be inferred from conduct. *See Plumbing Services*, 791 F.3d at 448; *Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004); *S. Cal. Painters & Allied Trade District Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1131–33 (9th Cir. 2004); *Carpenters Amended & Restated Health Benefit Fund v. Holleman Constr. Co.*, 751 F.2d 763, 770 (5th Cir. 1985); *Trs. of Atl. Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp.*, 724 F.2d 1458, 1459-60 (11th Cir. 1983); *Arco Electric Co. v. NLRB*, 618 F.2d 698, 699–700 (10th Cir. 1980).

*Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300, 310 (4th Cir. 2022). It also considered that the employer deducted dues from its employees' pay, responded to letters about late remittances, and complied with a fund's payroll audit. *Id.*

Here, the Funds' complaint adequately pleads adoption by conduct under the standard set by the Fourth Circuit. NY Chutes signed the 2015 MOU requiring it to contribute through at least July 2017. Then, even after the MOU expired, it reported and contributed as required by the Funds by reporting covered hours worked in 2019, reporting zero covered hours worked for all other months during the relevant period, and using the Funds' internet payment system. Second Am. Compl., ¶ 17.  NY Chutes deducted working assessments (commonly known as dues) from its employees' pay. *Id.* It complied with the Plaintiff Funds' and the Local Funds' payroll audit and corresponded at length with the auditors and the Local Funds about the audit and its reporting requirements. *Id.* Its employees also earned service credit from the NPF for work performed during the covered period. *Id.*

In *Four-C-Aire*, the Fourth Circuit found communications between the employer and the union telling. It recounted that "after the company first tried to end its relationship with Local 58, . . . the union's business manager responded that 'its attempt to terminate the collective bargaining agreement was invalid and ineffective, . . . . [The company] didn't respond that there was no CBA or that it had never seen [the agreement]. Rather, it sent a new notice that complied . . . with the termination procedures." *Id.* at 310. Here, like the employer in *Four-C-Aire*, NY Chutes sent a letter to Local 28 on December 21, 2021 seeking to withdraw from the union as of December 31, 2021. It later sent an email in March 2022 seeking to confirm that it had withdrawn from the union on December 31, 2021. These communications show Defendant acknowledged its obligations under the CBAs and only sought to terminate those obligations upon its December 21, 2021 letter.

Defendant argues that it "never expressly agreed to be bound by the 2017 or 2020 CBAs." That is true but irrelevant, because they didn't need to expressly agree to be bound. When an employer adopts an agreement by conduct, there is no requirement it have actually signed the written agreement to which it is bound. It is enough that a written agreement exists (here, the 2017 and 2020 CBAs); it need not be "a written agreement to which an employer is bound which also carries that employer's signature." *Four-C-Aire*, 42 F.4th at 311 (addressing LMRA Section 302(c)'s requirement that contributions be made only to a trust fund if there is a specific written agreement setting forth the detailed basis for the payments).

Defendant next argues that the factual circumstances in *Plumbing Services* and *Four-C-Aire* are distinguishable from the factual circumstances pled here – specifically that because NY Chutes did not contribute for the first 19 months after the expiration of the MOU and 90% of NY Chutes work during the audit period was performed by non-union workers, it had an "unmistakable intention not to be bound by the CBAs." Memo at 8. The Funds assert that they have more than adequately pled facts to survive a motion to dismiss and that determining whether NY Chutes is bound by conduct is more appropriate for summary judgment, after discovery has been conducted on these issues.

Still, turning to Defendant's specific argument, to say that NY Chutes did not contribute for the first 19 months following expiration is correct, but it is not correct to say that NY Chutes did not comply with its reporting requirement during that period. In fact, it did. It reported to the Funds, as required by the CBAs, that it performed 0 covered hours for each of the 19 months, using the Funds' internet payment system. Thus, NY Chutes was complying with the CBAs during that period. Moreover, that NY Chutes subcontracted and had covered work performed by non-union workers during the audit period is not evidence that NY Chutes did not intend to be bound; it is

8

evidence that NY Chutes breached the CBAs. The importance of NY Chutes' December 21, 2021 and March 2022 communications cannot be overstated – those communications provide clear evidence that NY Chutes understood itself to be bound to the CBAs through December 31, 2021.

NY Chutes points to several cases where courts found that an employer did not bind itself to a collective bargaining agreement by conduct. Memo. at 8. These cases are not binding precedent; they are all distinguishable; and, none of the cited cases were decided at the motion-to-dismiss stage.³ In each, the court weighed a complete factual record to determine that the employer's conduct as a whole did not bind the employer to an agreement by conduct. Here, the question for the Court is whether the Funds have sufficiently pled adoption by conduct, and it is unquestionable that based on the allegations in paragraph 17 of the Second Amended Complaint and the standard set by *Plumbing Services* and *Four-C-Aire*, the allegations are adequate and the case should proceed to discovery.

Turning to the cited cases, *Firesheets v. A.G. Bldg. Specialists, Inc.*, 134 F.3d 729, 731 (5th Cir. 1998) and *New Jersey Reg'l Council of Carpenters v. Jayeff Const. Corp.*, 495 F. App'x 230, 234 (3d Cir. 2012) are distinguishable because in each case, the employer only remitted contributions on behalf of employees who requested that contributions be made. There is no such allegation here, and even if there were, it is the Fund's position that contributions must have been remitted for all employees performing covered work. Defendant's reliance on these cases in its motion to dismiss show why a dispositive motion on these issues is premature. Discovery hasn't been conducted yet to determine whether key facts which supported the employers' defenses in *Firesheets* and *Jayeff* are present here.

---

³ All of the cases except *Panek v. Cimato Bros. Construction*, 2007 WL 3033948, at *3 (W.D.N.Y. Oct. 15, 2007), were decided on summary judgment. *Panek* was decided on cross motions for judgment as a matter of law based on a joint stipulation of facts.

The district court cases relied on by Defendant are also distinguishable. This case is not a case like *Panek*, where the court looked to whether the submission of benefit payments and remittance reports "was sufficient absent any other factors" to manifest an intent to be bound. The Funds have alleged more than payments and remittance reports alone; they have also alleged the payment of union dues, compliance with a payroll audit, and communications evidencing the employer working on union jobs and acknowledging its CBA obligations. This case is also not like *Millwrights & Machinery Erectors Local Union 729 v. Gulf Engineering Co., LLC*, 2011 WL 162071 (E.D.La Jan. 18, 2011), where among the facts "taken as a whole," the employer affirmatively rejected and refused to sign successor agreements. 2011 WL 162071 at *5. There is no such allegation here. Finally, *Laborers' Dist. Council of Virginia Health & Welfare Tr. Fund v. Cleveland Cement Contractors, Inc.*, 2014 WL 1017659, at *8 (W.D. Va. 2014) was decided prior to the Fourth Circuit's rulings in *Plumbing Services* and *Four-C-Aire* so the court lacked controlling guidance on these issues. Moreover, in that case, the fund argued that an employer adopted a 35-year-old agreement by conduct and the only support for that theory was the provision of remittance reports for a subset of employees. Again, the Funds have alleged more than the provision of remittance reports alone and the Funds do not reach back decades to establish their theory of liability.

Next, Defendant argues that although there may be objective intent to be bound to the CBAs in 2021, there was no intent in 2019 or 2020, so the Funds' claim must fail. Memo at 9. This argument ignores the pleaded facts. NY Chutes said on Dember 29, 2021 that it was serving its "official request to withdraw from the SMW Union Local 28 effective December 31, 2021." Second Am. Compl., ¶ 17. This email acknowledges that NY Chutes had not yet withdrawn and

10

remained bound for the relevant period. And during the entire time between July 2017 and December 2021, NY Chutes reported to the Funds every single month.

Finally, NY Chutes argues that even if its owners subjectively believed they were bound, such a fact shouldn't be considered because *Four-C-Aire* calls for an objective inquiry. Memo at 9. This is wrong. *Four-C-Aire* holds only that an employer cannot avoid liability by simply claiming it did not intentionally abide by the agreement. If the evidence shows that an owner acknowledged that he was bound to the agreement, then that would be considered by the Court in the analysis. Indeed, the Fourth Circuit did consider the meaning behind the owner's communications with the local union in *Four-C-Aire* to support its holding. 42 F. 4th at 310.

Accordingly, the Funds have sufficiently pled that NY Chutes was bound to the CBAs by conduct and the motion should be denied on this issue.

**II.      The Funds Have Adequately Pled a Breach of the CBAs.**

As described above, NY Chutes breached the CBAs in two ways. First, the audit determined that NY Chutes failed to make all required contributions on behalf of its covered employees. Second Am. Compl., ¶¶ 26, 29. As Defendant notes, these amounts due relate to work performed on the "Wilkison Hi-Rise Project." Second, the audit determined that NY Chutes violated the CBAs by subcontracting covered work to non-union employers. Second Am. Compl., ¶¶ 26, 30, 31. This was a violation of CBA Article III, Section 2, which prohibits bound employers from subcontracting covered work to employees outside the bargaining unit. Second Am. Compl., ¶ 20.

Thus, the Funds' complaint should not be dismissed because the Funds adequately pled a breach of the CBAs. Under Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required,

and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89 , 93 , 127 S. Ct. 2197 , 167 L. Ed. 2d 1081 (2007) (citations omitted). Here, the Second Amended Complaint meets the pleading requirements – it alleges that an audit was conducted, that the auditors concluded that there had been violations of specific alleged CBA provisions, and it sets forth the amounts due resulting from those violations. That is sufficient.

Defendant hinges its argument on the calculation being unplausible, so that it cannot stand under *Twombly*. The Funds disagree. To begin, although the audit reports can be considered by the Court on a motion to dismiss as documents integral to the Complaint, the document cited by NY Chutes in its Memorandum in Support at pages 11 and 12, Docket No. 65-2, is not the audit at issue. Docket 65-2 is Eric Meslin's declaration. He is the Local Union President and Exhibit 3 to his declaration (including pages 12 and 13) is the audit showing amounts due from NY Chutes to the Sheet Metal Workers' Local Union 28 Benefit Funds ("Local Funds"), not to Plaintiffs here.[4] Although the audit findings are similar in certain respects, Docket 65-2 is not the audit on which Plaintiffs' Second Amended Complaint is based.

The audit reports relevant to the Plaintiff Funds can be found at Docket No. 32-1. The Funds brought their original complaint under an audit report issued on April 29, 2022. Dkt. 32-1, ¶ 19. The original audit can be found at Docket No. 32-1 at pages 142-169. In response to information provided by NY Chutes in February 2023, the Funds revised the audit and included the revised audit at Docket No. 32-1 at pages 171-174. Dkt. 32-1, ¶ 20-21.

---

[4] The Local Funds audit report was offered in support of the Funds' adoption by conduct argument – to show that Defendant not only complied with the Plaintiff Funds' audit but also the Local Funds' audit and the Defendant had contributed to the Local Funds for covered hours.

The revised audit did not change the amounts due resulting from the subcontracting violation. Thus, the factual basis for the auditor's finding about the subcontracting violation can be found at Docket 32-1, page 146. The audit report states:

> The employer provided cash disbursements journal for 2018 through 2020. The employer provided checkbook invoices for 2016 and 2017. The auditor reviewed the records and questioned a sample of payees for each year of the audit period. Auditor noted the employer paid individuals not on payroll for covered work. Auditor also noted the employer used PeopleReady in 2020 as temp help. The website for this temp agency shows individuals performing trade work with sheet metal work as a service provided.

Dkt. 32-1, at 146. This provides a plausible basis for a subcontracting violation. If NY Chutes does not agree, then it may question the Funds about the determination in discovery; a more appropriate result then dismissing the claim at this early stage.

The revised audit did address the amounts due related to the Wilkinson Hi-Rise Project. And like the auditors did in the Local Funds audit, the auditors also determined that more than 79.25 hours should have been reported for the project, so divided the invoice amount by the journeyman rate to calculate an estimated amount due. Dkt. 32-1 at 173. Again, NY Chutes' argument is about the claim's plausibility, but the Funds have met the standard. The auditors determined that more than 79.25 hours should have been reported for the project and in the absence of specific proof of the specific amount, *see Trs. of Detroit Carpenters Health & Welfare Fund v. River City Constr.*, 99 Fed. Appx. 612, 614–15 (6th Cir. 2004), the auditor's calculation should be credited at the motion-to-dismiss stage. And where there is a challenge to audit findings, "the burden shifts to the employer to come forward with evidence of the precise amount of work performed." *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988). *See also Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 697 (6th Cir. 1994); *Combs v. King,* 764 F.2d 818, 822-27 (11th Cir. 1985). Such a challenge

would be appropriate at summary judgment, when NY Chutes could introduce evidence to meet its burden.

### III. If the Motion is Granted, Plaintiffs Should Be Given Leave to Amend the Second Amended Complaint.

Plaintiffs should not be denied a final opportunity at amendment. As the procedural history shows, Plaintiffs first filed their complaint on November 15, 2022. Dkt. No. 1. The complaint sought $74,258.64 in contributions from Defendant based on the audit findings, plus interest, liquidated damages and attorneys' fees mandated by 29 U.S.C. Section 1132(g)(2). Defendant had been provided with the audit findings before the complaint was filed and several demand letters were sent to Defendant about the amounts due. *See* Exs. 7-8 to the Declaration of Robert Geisler, Dkt. No. 32-1. But Defendant did not come forward with information necessary to revise the audit until after the complaint was filed. Upon reviewing the information provided by Defendant in February 2023, Plaintiffs amended their complaint on March 7, 2023. That amendment significantly reduced the amount sought from Defendants to $12,577.76 in contributions plus interest, liquidated damages and attorneys' fees. Had those documents been provided before the original complaint was filed, then the first amendment would not have been necessary, and it should not count against the Funds.

Additionally, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986). None of these factors are found here. There is no allegation that there is prejudice to NY Chutes – indeed, the delays in this case are equally borne by the parties given that NY Chutes did not obtain counsel until December 2023. There is also no allegation of bad faith on the part of the Funds.

Although amendments may be considered futile where plaintiffs have previously had two opportunities to plead their claim, this district has permitted parties to file a third amended complaint. *See, e.g., Advanfort Co. v. International Registries, Inc.*, 1:15-cv-220, 2015 BL 222973 (E.D. Va. July 13, 2015); *Garrett v. Commonwealth of Virginia*, 3:20-cv-986, 2020 BL 185001 (E.D. Va. May 27, 2022); *Mahone v. River City Recovery LLC*, 3:19-cv-373, 2020 BL 582813 (E.D. Va. Sept. 4, 2020). In *Field v GMAC LLC*, 660 F. Supp. 2d 679, 690 (E.D. Va. 2008), relied upon by Defendant, the Court held that the plaintiff had received "far more than two such full opportunities" where the plaintiff had multiple claims dismissed before the latest claims were dismissed with prejudice. Here, the Funds have not had any of their prior complaints dismissed. Because amendment would not be futile and the Funds' conduct is not comparable to the plaintiff in *Field,* leave should be freely given to amend if the Court dismisses the second amended complaint.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's motion to dismiss.

Respectfully submitted,

　　/s/ Diana M. Bardes
Diana M. Bardes (VA Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
dbardes@mooneygreen.com
(202) 783-0010
(202) 783-6088 (fax)
*Counsel for Plaintiffs*

January 23, 2024

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of January, 2024, I filed the foregoing Opposition to Defendant's Motion to Dismiss via the Court's CM/ECF system, which caused electronic notification upon the following:

Micah E. Ticatch
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182

*Counsel for Defendant*

              /s/ Diana M. Bardes
              Diana M. Bardes