IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| BOARD OF TRUSTEES SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) Case No. 1:22-cv-1294-PTG-WEF |
| v. | ) ) ) |
| NEW YORK CHUTES, LLC, | ) ) |
| Defendant. | ) ) ) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

In its initial Memorandum in Support (Dkt. 78), Defendant New York Chutes, LLC ("NY Chutes") demonstrated that Plaintiffs' Second Amended Complaint (Dkt. 59) should be dismissed both because: (1) Plaintiffs failed to plead that NY Chutes agreed to the relevant collective bargaining agreements; and (2) Plaintiffs failed to plausibly allege any breach by NY Chutes of the obligations under those agreements. As discussed below, Plaintiffs' Opposition (Dkt. 81) fails to adequately rebut either ground. Consequently, the Second Amended Complaint should be dismissed with prejudice.

A. **NY Chutes Did Not Manifest an Intention to Be Bound to the CBAs.**

In its initial Memorandum, NY Chutes analyzed the case law and demonstrated that Plaintiffs could not state a claim on the basis that NY Chutes accepted the subsequent CBAs by its conduct. (Dkt. 78 at 6-8). In their Opposition, Plaintiffs do not cite any additional authority and, instead, appear to rely entirely on the two Fourth Circuit cases previously discussed, *Trustees of the Plumbers & Pipefitters National Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436

(4th Cir. 2015); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 42 F.4th 300 (4th Cir. 2022).

While those cases are important for establishing that an employer can, in *some circumstances,* manifest an intention to join a collective bargaining agreement by its conduct (rather than by express agreement), these cases do not shed much light on the instant matter beyond that basic principle. That is because in both such cases, the employers' conduct strongly manifested the intent to be bound. Such a scenario does not exist here. (*See* Memo., Dkt. 78 at 6-7.)

In order to determine whether the sparse conduct in which NY Chutes is alleged to have engaged is actually sufficient to establish an intent to be bound, the Court must look to the cases where employers have engaged in conduct less involved than *Plumbing Services* or *Four-C-Aire*. NY Chutes cited such cases for the Court—all of which support dismissal of Plaintiffs' claims. Tellingly, Plaintiffs have failed to cite any case with facts that more clearly resemble those present here to support its position.

It is axiomatic that a party cannot "breach" a contract until *after* they have first agreed to be bound by the terms of the contract. In this case, where Plaintiffs' claims hinge on the theory that NY Chutes' conduct manifested an intent to be bound by the CBA, Plaintiffs must necessarily demonstrate that NY Chutes engaged in such conduct *before* they allegedly violated the CBA. The relevant questions are:

> (1) do the allegations in the Second Amended Complaint demonstrate that NY Chutes engaged in sufficient conduct to manifest an intention to be bound by the CBA before allegedly paying non-union workers (and not making union fund contributions) on the Wilson Hi-Rise Project in 2019?; and

(2) do the allegations demonstrate that NY Chutes engaged in sufficient conduct to manifest an intention to be bound by the CBA before allegedly paying (and not making union fund contributions on behalf of) non-union subcontractors in 2020?

As discussed below, the answer to both questions is clearly *no*. Consequently, Plaintiffs cannot state either claim and the Second Amended Complaint should be dismissed with prejudice.

1.  NY Chutes *did not* manifest an intention to be bound by the CBA before or during the Wilson Hi-Rise Project.

The MOU and initial CBA expired on July 31, 2017. (SAC ¶ 14; Dkt 32-1 at 8, 71.) According to the allegations, from the point of expiration to the beginning of the Wilson Hi-Rise Project in March 2019, NY Chutes did not employ any union labor; did not pay any union wages; did not remit any union dues; did not submit itself to any union grievance procedure; did not use any union halls; and did not sign any written agreement suggesting it wished to be bound by the new CBA.

The *only* relevant conduct that Plaintiffs allege prior to start of the Wilson Hi-Rise Project is that the company reported to the Union that it had no Union employee labor hours during that time period. But the case law is absolutely clear that the mere reporting of union hours (or in this case *no* union hours), on its own, does not manifest an intention to be bound to a CBA. *Firesheets v. A.G. Bldg. Specialists, Inc.*, 134 F.3d 729, 731 (5th Cir. 1998) (reports to union were insufficient to show an intent to be bound by CBA); *New Jersey Reg'l Council of Carpenters v. Jayeff Const. Corp.*, 495 F. App'x 230, 234 (3d Cir. 2012) ("There is no precedent to support the Funds' position that an employer that has not signed a CBA can nevertheless be bound by all of the provisions of the CBA solely from signing remittance forms."); *Laborers' Dist. Council of Virginia Health & Welfare Tr. Fund v. Cleveland Cement Contractors, Inc.*, 2014 WL 1017659, at *8 (W.D. Va. 2014) (holding submission of reports to the union was insufficient to establish intent to be bound);

*Millwrights & Mach. Erectors Loc. Union 729 v. Gulf Eng'g Co., LLC*, 2011 WL 162071, at *5 (E.D. La. 2011) (same); *Panek v. Cimato Bros. Const.*, 2007 WL 3033948, at *3 (W.D.N.Y. 2007) (same).

NY Chutes cited each of the above cases in its initial Memorandum. (Dkt. 78 at 8.) Plaintiffs have failed to cite *any case* to the contrary. To the extent Plaintiffs are arguing that the mere submission of reports to the Union is sufficient, in its own right, to manifest an intent to be bound, they are simply wrong on the law. Quite simply, NY Chutes did not manifest an intent to be bound prior to the start of the Wilson Hi-Rise Project.

Moreover, there are no allegations that would show an intent to be bound *during* the Wilson Hi-Rise Project. In the March 2019 – July 2019 time period, NY Chutes used 79.25 hours of Union labor, reported this time to the Union and paid contributions on this time. (*See* SAC ¶ 17(A)-(B).) According to the Second Amended Complaint, during the same project, NY Chutes purportedly used an additional 557 hours of non-union labor on that job, for which NY Chutes did not report any time to the Union or pay any contributions. (*See* Dkt. 32-1 at 173.)

Again, the case law is clear that such conduct, which is entirely contrary to the collective bargaining agreement's requirement to report and pay all hours, cannot demonstrate an intention by the employer to be bound. *Firesheets*, 134 F.3d at 731 (contributions for some employees but not others did not show an intent to be bound to CBA); *Jayeff*, 495 F. App'x at 234 (contributions on behalf of five union employees, but not the remaining non-union employees, was not evidence of an intent to be bound); *Cleveland Cement*, 2014 WL 1017659, at *8 (no intent to be bound when employer "made trust fund contributions only for employees who were union members."); *Millwrights & Mach.*, 2011 WL 162071, at *5 (no intent to be bound when employer paid all union members union rate and made contributions because, *inter alia,* the employer only used union

4

workers, rather than non-union workers, sparingly).  Once again, Plaintiffs' Opposition cites no law to the contrary.[1]

In sum, Plaintiffs' pleading fails to allege any conduct that is sufficient to demonstrate an intent to be bound by the subsequent CBAs prior to or during the Wilson Hi-Rise Project. Consequently, that Wilson Hi-Rise Project claim must be dismissed with prejudice.

2.  NY Chutes *did not* manifest an intention to be bound by the CBA in 2020.

Plaintiffs' second claim is that NY Chutes breached its obligations throughout 2020 by using non-union subcontractors to perform covered work and not reporting those hours or paying contributions for those workers.  (*See* Dkt 32-1 at 174.)  Plaintiffs do not, however, allege *any* conduct at all following the end of the Wilson Hi-Rise Project that would demonstrate an intent to be bound by the CBA in 2020.  In fact, the *only* allegation during this time period is that NY Chutes acted inconsistently with the CBA by using non-union contractors and not reporting those hours to the Union or paying contributions.  To state the obvious, acting in a manner that is completely contrary to the obligations in the CBA does not manifest an intention to be bound by that agreement— it manifests the opposite intent.  Consequently, the claim regarding the 2020 purported use of contractors must also be dismissed with prejudice.

---

[1] Likely because Plaintiffs failed to find any contrary caselaw, their legal analysis consists primarily of attempting to distinguish each of the cited cases on flimsy grounds.  For example, Plaintiffs argue that *Firesheets* and *Jayeff* should be ignored because in both cases contributions were provided for "employees who requested that contributions be made."  Opposition at 9.  This is beyond a distinction-without-a-difference— it demonstrates that Plaintiffs miss the point entirely.  CBAs require that contributions be made for all employees performing covered work. *Id.* ("it is the Fund's [sic] position that contributions must have been remitted for all employees performing covered work."). When an employer only contributes for some employees, and not others, the employer is clearly not manifesting an intent to honor the CBA.

B.      **Plaintiffs Have Not and Cannot Plead a Plausible Claim.**

As previously noted, Plaintiffs' Second Amended Complaint, in essence, simply asserts that NY Chutes is liable for unpaid contributions because its own audit says so.[2] (*See* SAC, Dkt. 59, ¶ 26, ¶ 30, ¶ 33.) In Opposition, Plaintiffs double-down on this theory and suggest that the Court is required to credit whatever the auditor states in its report on a motion to dismiss — no matter how implausible the auditor's conclusions. *See* Opposition at 13.

For this remarkable claim, Plaintiffs cite *Trustees of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co.*, 99 F. App'x 612 (6th Cir. 2004). But that case holds nothing of the kind. Instead, that case simply relies on the noncontroversial principle that when a plaintiff proves that an employer failed to maintain legally required records, the burden falls on the defendant to disprove the plaintiff's estimates of liability. *See id.* at 615. That case has no applicability here, where Plaintiffs cannot plausibly allege a failure to maintain legally required records.

Assuming Plaintiffs are permitted to plead a claim based solely on the audit report, then the audit report must meet the plausibility standard. Any holding otherwise would allow Plaintiffs to avoid the Supreme Court's mandate in *Twombly* and *Iqbal* that implausible claims should be dismissed before discovery.

      1.      <u>Plaintiffs have not stated a plausible claim regarding the Wilkinson Hi-Rise Project.</u>

As explained in more detail in the initial Memorandum, the allegations in the audit report regarding the Wilkinson Hi-Rise Project are speculative and implausible. If Plaintiffs had pled the Wilkinson Hi-Rise Project claim in its pleading, it would read something like this:

---

[2] It is not clear that such a pleading conforms to the Federal Rules' requirements, which is typically thought to require substantive allegations be stated in the pleading itself, rather than simply incorporate a separate document drafted by a non-lawyer who is not subject to the same ethical restraints that attorneys are.

> 1. NY Chutes earned $35,000 in revenue for the Wilkinson Hi-Rise Project.
>
> 2. NY Chutes reported 79.25 hours of time to the Union and paid contributions for those hours.
>
> 3. Therefore, NY Chutes must have failed to report or contribute for 557 non-Union labor hours.

The hypothetical paragraph 3 above, does not logically follow from paragraphs 1 and 2. It is simply possible-but-not-plausible speculation, which lacks grounding in sufficient factual allegations or logic. Notably, Plaintiffs' Opposition does not attempt to provide any substantive explanation for how the auditor's conclusion makes sense or is justified by the other facts alleged by Plaintiffs because there is no coherent explanation.

The Federal Rules do not permit Plaintiffs to proceed on such speculative conclusory statements. As such, the Wilkinson Hi-Rise claim should be dismissed for implausibility.

2.  <u>Plaintiffs have not stated a plausible claim regarding the use of subcontractors.</u>

In stating a plausible breach of contract claim, a plaintiff needs to identify the provision of the contract at issue, and the conduct taken to breach that provision. As previously noted, the CBA provides that subcontracting is not permitted only as to certain functions. (*See, e.g.,* Dkt. 32-1 at 20-22 of 174). It does not restrict all subcontracting. (*Id.*) In order to state a plausible claim for violation of the no-subcontracting clause of the CBA, Plaintiffs would need to allege what jobs the contractors *actually performed* in order to justify the conclusion that their work was encompassed by the CBA's prohibition.

Plaintiffs have not pointed to any factual allegations in the audit or the Second Amended Complaint that states what work these workers allegedly performed. In their Opposition, Plaintiffs

point to the original, withdrawn audit[3] as the supposed basis of their claim. *See* Opposition at 13 (citing Dkt. 32-1, page 146). The quoted paragraph simply asserts "employer paid individuals not on payroll for covered work." As previously noted, "covered work" is conclusory. To state a claim, Plaintiffs need to plead what work was supposedly done by the subcontractors that violates the actual language of the no-subcontracting clause.

Because Plaintiffs have not made such an allegation in either the audit or the Second Amended Complaint, the subcontractor claim is not plausible and must be dismissed.

## Conclusion

For the reasons stated above and those stated in the initial Memorandum in Support, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

Dated: January 29, 2024                                    Respectfully submitted,

                                                                                     /s/ Micah E. Ticatch
                                                     Micah E. Ticatch, VA Bar No. 83351
                                                     Edward Lee Isler, Va. Bar No. 27985
                                                     ISLER DARE, P.C.
                                                     1945 Old Gallows Road. Suite 650
                                                     Vienna, Virginia 22182
                                                     Phone: (703) 748-2690
                                                     Facsimile: (703) 748-2695
                                                     eisler@islerdare.com
                                                     mticatch@islerdare.com

---

[3] The original audit was withdrawn because it wrongly assumed that every employee of NY Chutes was performing work covered by the CBA at all times. Plaintiffs argue the Court should look to this faulty report rather than the revised audit report, because the latter was provided to the Union, rather than the Plaintiffs. *See* Opposition at 12. It is unclear why Plaintiffs wish to rely on a disavowed report, rather than the current information. However, as both reports fail to state a plausible claim, this point seems academic.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January 2024, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Eastern District of Virginia using the CM/ECF system, which automatically sends the foregoing via email to:

>Diana M. Bardes, Esq. (VA Bar No. 81831)
>Mooney, Green, Saindon, Murphy & Welch, P.C.
>1920 L Street, NW, Suite 400
>Washington, D.C. 20036
>(202) 783-0010
>(202) 783-6088 (facsimile)
>dbardes@mooneygreen.com
>*Counsel for Plaintiff Funds*

>　　*/s/ Micah E. Ticatch*
>Micah E. Ticatch, Va Bar No. 83351
>ISLER DARE, P.C.
>1945 Old Gallows Road, Suite 650
>Vienna, Virginia 22182
>Telephone: (703) 748-2690
>Facsimile: (703) 748-2695
>E-Mail: mticatch@islerdare.com
>*Counsel for Defendant*
>*New York Chutes, LLC*